[No. 44053. En Banc. December 16, 1976.]

THE STATE OF WASHINGTON, *Respondent,* v. BERNARD J. KROLL, *Appellant.*

*Don L. McCulloch* and *Philip E. Hickey* (of *Roethler & McCulloch*), for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *James E. Warme, Chief Criminal Deputy,* for respondent.

BRACHTENBACH, J.—Defendant appeals from a judgment and sentence entered upon a jury verdict finding him guilty of first-degree murder. We affirm.

Defendant was convicted of murdering a 15-year-old girl after a high school football game. The girl's nearly nude body was discovered in a wooded area near Kalama High School where she had earlier attended a football game. She was found lying on her back with her legs spread apart. Her Levi pants had been torn off, her underpants removed, and her blouse and brassiere had been pushed up over her breasts. Her head had been struck repeatedly upon some object, probably a log or tree. Death was caused by strangulation.

Defendant makes 13 assignments of error, 8 of which involve jury instructions. To five of these challenged instructions no exceptions were taken on the record. The only reference in the record to these five assignments of error appears in a stipulated supplemental statement of facts, which provides:

> That also at this time [at the close of testimony] there was a preliminary discussion of the Court's proposed instructions and the counsel for the defense objected to instructions having to do with the Counts of rape, leaving the scene of an attempted rape, attempted rape, and instructions which define rape or attempted rape, on the grounds and for the reasons indicated above and discussed at the close of the State's case. (S. 504-511.) Counsel further objected to the Court's proposed instruction on the presumption that an unlawful killing is murder in the second degree (Instruction 10) on the ground and for the reason that the proposed instruction placed an improper burden of proof on the Defendant.

A record in this condition is of little help to this court. Proper appellate review requires a record which contains the specific theories and exceptions advanced to the trial court. Trial judges have weighty responsibilities in con-

ducting a trial which is fair to both sides. They are entitled to the assistance of counsel in directing attention to specific proposed instructions, submitting proposed instructions, and making clear the objections and theories relied upon. *Lasser v. Grunbaum Bros. Furniture Co.*, 46 Wn.2d 408, 281 P.2d 832 (1955). In view of the stipulation and the seriousness of the crime involved we have gone as far as we can in evaluating defendant's alleged assignments of error. It should be made clear, however, that such practice does not serve the goal of a fair and just trial and comprehensive appellate review.

## I

Defendant's first assignment of error involves claims of prosecutorial misconduct. Only two of the instances set forth by defendant merit consideration, but they are serious. One concerns the opening statement, the other final argument.

To understand this assignment of error and others that follow, it is necessary to review in some detail the evidence presented at trial. It is important to keep in mind that the State's case against defendant consisted entirely of circumstantial evidence.

The setting for this tragic death was a high school football game. Shortly before the game the defendant, out of the presence of the victim, drank a substantial quantity of wine. During half-time, the defendant was observed asking friends if they had seen the victim, explaining that he and the victim were planning to go drinking after the game. The victim likewise expressed to various witnesses that she intended to go drinking later that evening.

The last time the victim was seen alive, she and defendant were observed leaving the football field, walking toward the high school gymnasium. This probably occurred between 9:45 and 10 p.m. The murder scene was a short distance beyond the gymnasium, in a wooded area.

About 10:30 p.m. several of defendant's friends observed him in downtown Kalama. He had blood on his shirt and pants, and smeared blood around his mouth. His pants were

unzipped. He told his friends that some out-of-town boys had asked him to go drinking behind the gym, and that they had beaten him and left him unconscious. Defendant claimed he awakened and found a body next to him. He asked that he be taken to the local police to report the matter. The police sent defendant to the fire station for emergency treatment and then went to search for the body.

At the fire station, defendant was examined by a first aid technician and a fireman. The examination revealed no apparent cuts or wounds to account for the extensive blood on defendant and his clothes. After being cleaned up, defendant was taken to the scene of the crime, whereupon he led officers to the body.

At the scene of the murder, a coat, a watch, and a handkerchief were found which either belonged to the defendant or were similar to articles owned by defendant.

Later that night, defendant was examined by a physician. The result of that examination proved inconsistent with defendant's claim that he had been beaten into unconsciousness. The only marks or evidence of damage to defendant were a very small bruise on his neck and a slight cut in his mouth. There were also minor brush-type scratches on his arms. Dirt was found on the front portions of defendant's genital area. Blood was found on his undershorts, pants and shirt. Bloodstains were also discovered under the defendant's fingernails.

An autopsy of the victim revealed that while there had been multiple blows to her head, the actual cause of death was strangulation. The pathologist testified that strangulation would require a minimum of 2 minutes choking pressure. The autopsy further revealed a mark on each of the victim's arms. The pathologist testified that the marks were caused by an object being pressed against the victim's arms. These marks matched metal rings on defendant's boots. It is the State's theory that the defendant, while choking the victim, held her arms by pressing his legs against them, thus causing the marks from his boots.

The blood on the victim's body was blotted or smeared

as though someone had lain on top of her. There was no evidence, however, of any sexual penetration. The blood around her mouth was similarly blotted or smeared. The defendant also had blotted or smeared blood around his lips.

Defendant did not testify at trial, but presented evidence on two points. First, several witnesses placed him at the school at a time later than the State's witnesses said the victim and defendant left. Second, there was testimony about defendant's reputation for the lack of sexual aggressiveness. There was also conflicting evidence as to the defendant's intoxication.

In sum, this was the evidence presented at trial. Keeping this evidence in mind, let us return to defendant's first assignment of error involving alleged prosecutorial misconduct during the opening and closing statements.

Prior to the prosecutor's opening statement, the judge cautioned the jury that opening statements are offered merely to show what each party expects to prove and are not to be considered as evidence. The prosecutor gave a similar admonition in his opening statement before proceeding to reconstruct a detailed scenario of how the murder occurred. Defendant objected to the prosecutor's statement of how the murder occurred as argumentative and not supported by the evidence. Although defendant's objections were overruled, the trial court reminded the jurors once again of the nature and purpose of the opening statement and that their verdict was to be based upon the evidence and not what was said in the opening statements. In continuing his opening remarks, the prosecutor hypothesized to the jury that the defendant had become angry when the victim refused his advances; that in a state of rage he beat her head against a tree; that he dragged her to a leafy area and removed most of her clothes; that with the victim still struggling to resist his advances he strangled her; and that he thereupon removed his pants and lay upon the dead body, becoming bloodied in the process.

■ The purpose of the prosecutor's opening statement is to outline the material evidence the State intends to in-

troduce. Argument and inflammatory remarks have no place in the opening statement. 2 L. Orland, Wash. Prac. § 213 (3d ed. 1972). The opening statement is based upon the anticipated evidence and the reasonable inferences which can be drawn therefrom. *State v. Aiken*, 72 Wn.2d 306, 351, 434 P.2d 10 (1967). Control of the content of these remarks rests within the sound discretion of the trial court.

Here the prosecutor bordered on the line of an impermissible statement. His reference to the defendant's rage, the victim's resistance while injured and in a panic, and similar comments were unnecessary to an outline of the evidence. Such references, however, do not merit a reversal. The trial court cautioned the jurors on several separate occasions as to the nature and purpose of the opening statement. It is presumed that the jury followed the court's admonitions. *State v. Ingle*, 64 Wn.2d 491, 392 P.2d 442 (1964). Moreover, the evidence does support, directly and by inference, a brutal crime and an apparent struggle consistent with resistance. In light of these factors we cannot say that the trial court abused its discretion in permitting this opening statement.

In the State's closing rebuttal argument, the following statement was made by the prosecutor.

Ladies and gentlemen of the jury, I am done now, and I am just going to say one more word about reasonable doubt. As I have indicated to you, and as Mr. McCulloch has indicated to you, a reasonable doubt is a doubt which exists in the mind of a reasonable man after he has fairly, carefully considered all of the evidence in this case. Ladies and gentlemen, I suggest to you that if you have a reasonable doubt, some reason to turn this defendant loose, then you can come out here and give a reason to the mother of the next girl that Bernie Kroll asks on a date, why the defendant is innocent—[defense counsel interrupts]

The nature of a prosecutor's duty, as a quasi-judicial officer, is well set forth in *State v. Huson*, 73 Wn.2d 660, 663, 440 P.2d 192 (1968):

We have stated on prior occasions, and we reassert, that a public prosecutor is a quasi-judicial officer. He repre-

sents the state, and in the interest of justice must act impartially. His trial behavior must be worthy of the office, for his misconduct may deprive the defendant of a fair trial. . . .

We do not condemn vigor, only its misuse.

[4] Clearly the prosecutor's remark was improper, but not prejudicial under the particular circumstances of this case. Though reprehensible, an improper juror argument is not of necessity prejudicial. *State v. Huson, supra.* The remark must be placed in the context in which it was made. The battle had heated up considerably during closing arguments, with defense counsel interrupting and objecting eight times during the State's closing and moving for a mistrial on four occasions. Defense, in closing, characterized the prosecutor's opening statement as "the most prejudicial, the most inflammatory, the most gruesome, dime-store type opening that I have ever heard. Totally uncalled for." He accused the State of trying to mislead the jury, of trying to hide facts and described certain of the State's evidence as malarkey intended to mislead the jury. At another point he objected to the prosecutor's argument and stated "The prosecutor knows that is a flat-out lie." He argued that the prosecutor had misstated the instruction on reasonable doubt and then added: "He is not even content to live with the law after the judge reads it. He wants to continue to get his insinuations and his opinions into evidence."

Finally in his closing sentences, defense counsel stated:

I anticipate that the closing of the prosecutor is going to be another dime-store-type prejudicial argument. I sincerely hope that it is not. I would just want to caution you people on one thing, that when you reach your verdict, whatever it may be, the twelve of you are going to have to come back out into this courtroom, sit in the seats in which you are sitting, look over at Bernie Kroll, and tell him how you decided the fate of his life.

It was in this setting that the prosecutor made the quoted remark. The defendant had made reasonable doubt, its meaning and application the subject of some dispute. The prosecutor argues that his remark was intended to convey

to the jury the notion that a reasonable doubt is one for which they could give a reason or explanation. He chose unnecessarily inflammatory words to illustrate his point.

Defense counsel objected to the prosecutor's remark as improper and prejudicial. At first, defense counsel sought a mistrial, but then asked the court to admonish the jury to disregard the remark. The jury was thus instructed to disregard the prosecutor's statement. It is presumed that the jury follows the court's instructions. *State v. Ingle, supra.* Under these circumstances, we do not find the remark so prejudicial as to make the court's admonishment ineffectual.

## II

Defendant takes exception to the giving of instruction No. 1. This instruction, which is a restatement of the information filed against defendant, states:

> The defendant, Bernard J. Kroll, is charged by information as follows:
>
> The defendant in the County of Cowlitz, State of Washington, on or about the 1st day of November, 1974, with a premeditated design to effect the death of Sherene A. Guetzloe and while in the commission, and the attempt to commit and in the withdrawal from the scene of a rape of the said Sherene A. Guetzloe; did wilfully, unlawfully and feloniously kill the said Sherene A. Guetzloe;
>
> To this information the defendant has entered a plea of not guilty which puts in issue every material allegation contained in the information.

Defendant's challenge to this instruction is on four grounds. First, that the statute[1] upon which the information was founded includes the words "without design to effect death." This argument is without merit. No objection was made on this ground nor did defendant propose such language be added to the instruction. In fact another instruction defined the three degrees of homicide and, in the appropriate category, included the phrase "without design to effect death." Second, defendant argues that the information should have been amended and the instruction reworded to reflect the dismissal of the charge of rape. No authority for

---

[1]Laws of 1919, ch. 112, § 1, p. 273, *as amended* RCW 9A.32.030 (1975).

this proposition is cited. Assignments of error unsupported by citation authority will not be considered on appeal unless well taken on their face. *Northern State Constr. Co. v. Robbins*, 76 Wn.2d 357, 457 P.2d 187 (1969). The third and fourth challenges deal with the instructions referenced to attempted rape and withdrawal from the scene of an attempted rape which the defendant contends should have been eliminated, a contention which we will discuss later.

### III

Although no specific exception was made on the record, defendant assigns as error the giving of the following instruction which, in relevant part, provides:

> To convict the defendant of the crime of murder in the first degree, the State must prove beyond a reasonable doubt . . . that said killing was done . . . while attempting to commit rape or while withdrawing from the scene of an attempted rape.

The instruction is based upon the then felony murder statute.[2]

Defendant, in an elaborate argument, contends that the withdrawal portion of the statute can be invoked only if the prohibited crime has been accomplished. In other words, he maintains that the felony murder statute is operative only if the defendant is withdrawing from a successful rape, but is not applicable if the defendant kills in the attempt or withdrawal from an attempted rape.

 The ultimate result of the defendant's argument is that a person is guilty of a felony murder if the killing occurs during or while withdrawing from a successful rape, but not guilty if the killing occurs during an unsuccessful attempt. Such a result is illogical. What the statute says and means is that if a person is going to attempt or actually commit robbery, rape, burglary, larceny, or first-degree arson and kills in the commission thereof, or in leaving an unsuccessful attempt, the crime is murder in the first degree. Thus the killing and leaving the scene of an attempted rape is declared legislatively to be first-degree murder even

---

[2]See footnote 1.

though the element of premeditation is absent. The legislature has declared that a person who commits one of the described felonies and inadvertently kills someone in the process or in withdrawing from the scene and attempt is guilty of first-degree murder. There was no error, therefore, in the giving of this instruction.

## IV

■ Defendant assigns error to the giving of instruction No. 10,[3] which provides that when a homicide is proved beyond a reasonable doubt, there is a presumption of second-degree murder and it is incumbent upon the defendant to show the homicide to be manslaughter. Defendant contends that this instruction unconstitutionally shifts the burden of proof from the State to the defendant. No on-the-record exception was taken to the giving of this instruction and it need not be considered for the first time on appeal. Because, however, the giving of the instruction raises a significant constitutional issue, justice requires us to consider defendant's contentions. *Peoples Nat'l Bank v. Peterson*, 82 Wn.2d 822, 514 P.2d 159 (1973).

■ The instruction complained of has been upheld by the court on numerous occasions. *See, e.g., State v. Thomas*, 63 Wn.2d 59, 385 P.2d 532 (1963); *State v. Sill*, 47 Wn.2d 647, 289 P.2d 720 (1955). Doubt, however, has recently been cast upon the burden placed upon the defendant in these cases by the language and holding of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). The court in *Mullaney* held that the following instruction placed an unconstitutional burden of proof on the defendant:

" 'In all cases where the unlawful killing is proved beyond a reasonable doubt, and where there is nothing

---

[3]Instruction No. 10 states:

"When the killing of one human being by another is proven beyond a reasonable doubt, the law presumes that such killing constitutes Murder in the Second Degree. If the State would elevate it to Murder in the First Degree, it must prove beyond a reasonable doubt the elements of First Degree Murder. If the defendant would reduce it to Manslaughter, he has the burden of creating a reasonable doubt as to the elements [of] Second Degree Murder."

in the circumstances of the case to explain, qualify or palliate the action, the law presumes it to have been done with malice aforethought. And if the accused, that is the defendant, would reduce the crime below the degree of murder, the burden is upon him to rebut the inference which the law raises from the act of killing, by evidence in defense.'

*Wilbur v. Mullaney,* 473 F.2d 943, 944 (1st Cir. 1973).

We find no material difference between the instruction quoted above and the instruction given here. Under our legal system, the burden is always upon the prosecution to establish every element of crime by proof beyond a reasonable doubt, never upon the accused to disprove the existence of any necessary element. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Yet under this instruction, the State is not required to prove every element of second-degree murder; it need only prove beyond a reasonable doubt the killing of one human being by another. No reference is made in the instruction to the fact that second-degree murder statutorily involves the element of intent. If the defendant is to reduce the crime to manslaughter, however, he has the burden of creating a reasonable doubt as to the absence of intent. Such a shifting of the burdens of proof clearly violates the concept of due process announced for the first time in *Mullaney v. Wilbur, supra. See also State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976).

▮ Although we find the instruction unconstitutional, we do not find the error to warrant reversing the conviction. A constitutional error can be harmless where the court is able to declare it to be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1966). In the present case there can be no question but that the error was harmless as the defendant was convicted of first-degree murder. Were he convicted of second-degree murder a different question would be before us. The instruction clearly placed upon the State the burden of proving beyond a reasonable doubt the elements of first-degree murder. The jury's verdict shows that the State sustained that burden. It necessarily follows,

therefore, that the presumption of second-degree murder and the potential shifting of the burden to the defendant for a manslaughter verdict were never elements for jury consideration. The error was harmless.

## V

■ Defendant urges that the trial court erred in allowing the State to call three rebuttal witnesses. The admission of rebuttal evidence is a matter within the discretion of the trial court. Generally, rebuttal testimony is receivable where new matter has been developed by the evidence. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968). The defendant's evidence raised a plausible theory that the victim had discussed going drinking with persons other than the defendant. To rebut this inference the State called two witnesses who admitted that they had discussed the possibility of drinking with the victim, but in fact had gone elsewhere without her. The defense also presented testimony concerning an incident between the victim and a young man which took place during the football game half-time and which involved a cigarette package. A similar cigarette package was found near the victim's body. The third rebuttal witness testified that he and the victim had scuffled, earlier in the evening, over a cigarette package, but that he had retained that package, taking it with him to another geographical area.

These brief bits of testimony were permissible rebuttal against the inferences raised by the defense. Their admissibility was within the discretion of the trial court and there was no abuse of that discretion.

## VI

The next assigned error relates to the sufficiency of the evidence to sustain instructions regarding the commission of a homicide while attempting to commit rape. The information filed against the defendant charged him with murder while in the commission of a rape, and the attempt to commit a rape, and in the withdrawal from the scene of a rape. At the conclusion of the testimony, counsel for defendant moved for the dismissal of the elements of rape, attempted

rape, and leaving the scene of a rape. The court dismissed the charge of rape but refused to dismiss the allegation of attempted rape. It is defendant's contention that for the element of attempted rape to remain in the case there must be evidence of a specific intent and overt act toward attempted penetration. This argument, however, fails to perceive the difference between direct and circumstantial evidence. The latter may be just as telling and compelling as the former. The position and nudity of the victim, the smeared blood, the blood stains on defendant's undershorts and dirt on his genitals were strong evidence of an intent and an overt act. We conclude that there was sufficient circumstantial evidence to prove the elements of attempted rape. *See State v. Ray*, 63 Wn.2d 224, 226, 386 P.2d 423 (1963), wherein the court stated:

> Forced by the undisputed evidence to concede proof prima facie of both an assault and an intent, appellant says that the two elements combined do not constitute an attempt. He points to the lack of the one essential ingredient as a fatal defect in making the described actions an attempt to rape—the overt act toward physical penetration. We are not disposed to indulge in hair-splitting subtleties by a holding that the acts of defendant constituted preparation with intent only. From the evidence, the jury could well have found so many overt acts tending directly toward consummation of the rape as to place the question beyond argument. The beating, choking, dragging, grappling, throwing upon the ground, disturbing the clothing, the unzipping of the trousers—all were overt acts toward assault, and, coupled with an avowed purpose to have sexual relations with the victim against her will, constituted overt acts toward the rape.

Defendant's assignment of error is without merit.

## VII

■ Defendant assigns error to the giving of the second-degree murder instruction which included the element of the attempt of, commission of, or withdrawal from the scene of a second-degree assault. Defendant takes exception to the instruction's failure to define second-degree assault. The assignment is without merit. Although second-degree assault

was not defined in this instruction it was defined in a later instruction. Instructions must be read as a whole and if, from all the instructions, it can be said that the jury was properly instructed as to the elements of the crime, it is sufficient even though one of them fails to define some essential part. *State v. Haynes*, 71 Wn.2d 136, 426 P.2d 851 (1967).

## VIII

Defendant assigns error to the giving of an instruction defining the act of rape. No exception was taken by defendant at trial to this instruction. The stipulated statement of facts does, however, contain a reference to defense objections to the count of rape for reasons "discussed at the end of the state's case." A review of that discussion shows it to be inadequate to preserve the issue. In any event, we find no prejudicial error in the giving of this instruction as the formula instruction on the elements of first-degree murder, of which the defendant was convicted, referred solely to *attempted* rape. When read in conjunction with the definition of attempted rape, this instruction was not prejudicial.

## IX

Defendant objects to the instruction which defined attempted rape. The sole issue is the failure of the instruction to define what is an "overt act" directed toward sexual intercourse. No exception was made to this instruction. Failure to take exception at the trial level bars raising the issue on appeal. *State v. Jackson*, 70 Wn.2d 498, 424 P.2d 313 (1967). The instruction given was identical to one submitted by defendant. No error can be predicated on the failure of the trial court to give an instruction when no request for such an instruction was ever made. *State v. Proctor*, 71 Wn.2d 882, 431 P.2d 703 (1967). Defendant's assignment of error is completely without merit.

## X

Defendant takes exception to instruction No. 21[4] which

---

[4] Instruction No. 21 provides:
"The court instructs the jury that the law presumes that every

provides that "the law presumes that every man intends the natural and probable consequences of his acts." Defendant concedes that this is a proper instruction as to the charge of murder because death did in fact result from the acts of assault, but defendant contends that the instruction is erroneous as to the proof of intent to rape because a rape did not occur. Defendant did not, however, propose an instruction limiting the presumption to the charge of murder. The defendant's position might be well taken if the instruction encompassed the proof of intent by an unaccomplished act, *State v. Davis*, 72 Wash. 261, 266, 130 P. 95 (1913), but the instruction only mentions the act of killing. No attempt was made by the prosecution to argue that this instruction gave the foundation for proof of intent to rape. In view of the fact that instructions must be read as a whole and the fact that this instruction refers specifically to the "intent of the defendant at the time of the killing," we do not find the defendant to be prejudiced by the giving of this instruction.

## XI

At trial, defendant presented a defense of intoxication. This defense was put to the jury in the form of an instruc-

---

man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

" 'Intent' is a mental condition or process and may be shown by direct proof or may be derived from and established by the attendant facts and circumstances as shown by the evidence. In determining the question of the intent of the defendant at the time of the killing herein alleged, if you find from the evidence that the defendant committed such killing, you may take into consideration the nature and character of the weapon or instrument used, if any; the manner in which such weapon or instrument was used, if at all; the acts and conduct of the defendant, together with all the other facts and circumstances shown by the evidence, and from all these, determine the intent of the defendant in this case."

tion.[5] The defendant takes exception to that portion of the intoxication instruction which states: "But I charge you that in dealing with such a condition you ought to use great caution not to give immunity to persons who commit crime when they are inflamed by intoxicating drink." Defendant contends that this is a comment on the evidence. Such language has, however, been approved in the past. *State v. Runnells*, 64 Wn.2d 995, 390 P.2d 1003 (1964); *State v. Miller*, 177 Wash. 442, 32 P.2d 535 (1934). Taking the instructions as a whole, we do not find that the sentence constitutes reversible error. It does seem, though, that the language is unnecessarily emphatic and it should be deleted in the future.

## XII

Defendant next assigns error to a brief demonstration conducted by the prosecutor during closing arguments. To understand this issue a review of one line of testimony is necessary. The State's pathologist testified that the victim had very unusual marks on each arm. Those marks indicated that pressure from some object had been applied to the arm surface, resulting in the bruises. The shape of the marks matched rings and straps on the defendant's boots. The pathologist testified that the pressure on the arms, from the boots, could have caused the marks. Defendant objected to a question as to whether the marks were consistent with someone sitting on the victim's body and holding her arms down by pressure from pressing the boots against her arms.

In final argument the State was allowed to conduct a demonstration in which one man sat astride another, the

---

[5] The instruction on intoxication provides in relevant part:

"But I charge you that in dealing with such a condition you ought to use great caution not to give immunity to persons who commit crime when they are inflamed by intoxicating drink. You must discriminate between the conditions of mind merely excited by intoxicating drink, and yet capable of forming a specific intent to commit a crime, and such a prostration of the faculties as renders a man incapable of forming the intent. If an intoxicated person has the capacity to form an intent to commit the crime charged herein and conceives and executes such an intent, it is no defense that he was induced to conceive it, or to conceive it more suddenly by reason of his intoxication."

purpose of which was to demonstrate how the defendant might have sat on the victim, holding her arms and leaving the marks found thereon. The court restricted the matter to a simple showing of position, and cautioned the jury that the demonstration was not evidence. The evidence from the pathologist indicated that the defendant's boots could have caused the marks as indicated. The demonstration merely showed the jury the manner in which it could have been physically accomplished.

█ Argument of counsel is limited to the evidence and to fair and reasonable deductions to be drawn therefrom. *State v. Adams*, 76 Wn.2d 650, 660, 458 P.2d 558 (1969). We find no abuse of discretion in allowing the prosecutor to demonstrate a reasonable inference from the evidence. *See State v. Madry*, 12 Wn. App. 178, 183, 529 P.2d 463 (1974).

## XIII

Finally, defendant makes a 2-pronged attack upon the formula instruction which defined the elements of first-degree murder to include the unlawful killing of a human being "with premeditation" or "while attempting to commit rape or while withdrawing from the scene of an attempted rape." Defendant's first challenge is to the sufficiency of the evidence to support a finding of attempted rape. We disposed of this issue earlier. Second, defendant complains that the instruction does not require the jury to be unanimous in its decision as to which alternative act the defendant committed in order to find the defendant guilty. Defendant made no objection, however, to the instruction on this ground at trial. In fact, the instruction is materially identical to the one proposed by defendant. There was no error under these circumstances.

Judgment affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, HOROWITZ, and DOLLIVER, JJ., concur.

Petition for rehearing denied February 4, 1977.