# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 73962-0-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TYLER SAVAGE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 18, 2016 |

SPEARMAN, J. — Tyler Savage was convicted by a jury of first degree murder for killing sixteen-year-old K.D. The jury also found, as an aggravating circumstance, that the crime was committed in the course of, in furtherance of, or in immediate flight from rape in the first degree. Savage argues that he was deprived of his right to present a defense when the trial court excluded evidence of sexually explicit video clips that K.D. allegedly viewed during the days before her death. He also argues that the trial court erred in failing to instruct the jury that they had to find that K.D. was alive at the time the rape occurred in order to find the aggravating circumstance existed. We find no error and affirm.

## FACTS

On the afternoon of August 17, 2010, sixteen year old K.D. was riding her bike to a friend's house when she encountered Tyler Savage. K.D. had been diagnosed with

fetal alcohol syndrome and it was estimated that her cognitive functioning was somewhere between a third and fifth grade level. She participated in special education classes at school, with a number of accommodations and enjoyed competing in the Special Olympics. K.D. had undergone a number of corrective surgeries on her feet. She walked with a contorted step and often wore a leg brace. Savage, who was 18 years old, was a casual acquaintance of K.D. He had dated a friend of hers who told him that K.D. had a crush on him.

Later that day, around 4:00 p.m., K.D.'s father, Cecil Daily, arrived home. When he saw that K.D. had not returned home at the expected time of 3:00 p.m., he called her cell phone and her friends but was unable to reach her or learn her whereabouts. Daily called the police and reported her as missing. The next day the police commenced a search.

On August 18, 2010, detectives contacted Savage after learning that witnesses had seen him with K.D. the day before. Savage admitted that he met K.D., but said they parted ways upon reaching a street that she was not supposed to cross. Savage spoke with the detectives two more times and a few days later, he agreed to help find K.D.

On August 23, 2010, a detective confronted Savage and told him they knew K.D. was dead and that Savage had killed her. Savage then led the detectives to a vacant lot where K.D.'s body was found in some blackberry bushes. Her clothes had been removed and a shirt and bra had been tied around her neck. Savage explained that he and K.D. had been sitting in the field, and when K.D. got up to leave, he came from behind and choked her to death with his arm. He stated that he took off her clothes, tied

2

the shirt and bra around her neck, touching her breasts and inserting two fingers into her vagina before hiding her in the bushes.

Savage was arrested and charged with one count of aggravated first-degree murder. The State alleged that Savage murdered K.D. with premeditated intent and in the course of, in furtherance of, or in immediate flight from the crime of rape in the first degree. The State also charged Savage with the aggravating factors that he knew K.D. was particularly vulnerable or incapable of resistance and that the crime was committed with sexual motivation. See RCW 9.94A.535(3)(b) and (f), respectively. The State introduced evidence of K.D.'s diagnosis and her cognitive and physical limitations, along with witness testimony that her limitations were readily apparent.

Savage's testimony at trial differed from the statements he had given during police interviews. At trial, he testified that he and K.D. had arranged to meet that day via Facebook. They met and went to the vacant lot, and K.D. asked Savage if he wanted to have sex with her. Savage thought she was joking at first, but ultimately agreed. Savage testified that K.D. directed him to tie something around her neck. Over his protests, she assured him that it was safe and that she had done it before. He testified that K.D. removed her shirt and bra and Savage tied them around her neck. They began kissing and touching and at one point, K.D. became motionless. Savage testified that at that point she was not breathing and did not respond when he shook her. Savage claimed he panicked and tried to make it look as though she had been raped. Thinking she was dead, he took off the rest of her clothes and penetrated her with his fingers. He testified that he lied before because he did not think anyone would believe the truth.

3

Before trial, Savage moved to introduce thirteen sexually explicit video clips that were found in the internet browser history on K.D.'s computer. The clips were selected from approximately 550 sexually explicit videos that had been viewed on K.D.'s computer during the month before her death. Savage also offered evidence that K.D. was the only person using the computer. The clips offered by Savage depicted scenes involving outdoor or public sex, bondage, and asphyxiation. He argued that the presence of the videos in the browser history showed that K.D. had an interest in engaging in these types of acts. He contended the evidence supported his theory that K.D.'s death was an accident resulting from consensual sex acts, including erotic asphyxiation. He also claimed the videos rebutted the allegations of premeditation and that K.D. was particularly vulnerable. He further argued that the evidence was not barred by Washington's rape shield statute, citing the exception in RCW 9A.44.020(3). That section permits the admission of evidence of the victim's past sexual behavior if, among other things, it is relevant to the issue of consent.

The trial court found the evidence was barred by the rape shield statute and denied the motion. It reasoned that while evidence of a previous history of engaging in similar sexual activity might be relevant, the logical nexus between merely viewing pornography and engaging in acts similar to those viewed was tenuous at best. The court stated it was struggling "to find a bridge" from "viewing pornography to actual engagement," and "just d[id]n't find it." Verbatim Report of Proceedings (VRP) (11/07/13) at 822-23. The court also ruled that while viewing pornography was "sexual behavior" under the rape shield statute, there was insufficient similarity between the

4

behavior of "[v]iewing versus doing" to escape the statute's general bar to the admission of such evidence. Id. at 825.

At trial, Savage proposed instructions advising the jury that in order to find he had committed the predicate crime of rape, the State had to prove that when he committed the acts constituting rape, that (1) K.D. was alive, and (2) that he knew it. The trial court refused to give either instruction. The jury found Savage guilty of aggravated first-degree murder as charged. The jury also found that K.D. was particularly vulnerable or incapable of resistance at the time of the offense and that the crime was sexually motivated. On January 17, 2014, Savage was sentenced to life without parole. He appeals.

## DISCUSSION

Savage first argues that the trial court erred when it refused his request to admit into evidence thirteen of the video clips found in the internet browser history on K.D.'s computer. He claims the evidence was admissible under the rape shield statute, RCW 9A.44.020(3), and that its exclusion violated his right to present a defense under the sixth and fourteenth amendments to the United States Constitution and article 1, § 22 of the Washington State Constitution.

"'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). This includes the right to offer testimony and examine witnesses. Id. But because the right only applies to relevant evidence, a

defendant must show that the evidence sought to be admitted is "'of at least minimal relevance.'" Jones, 168 Wn.2d at 720 (quoting State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002)). We review de novo an alleged violation of a defendant's right to present a defense. Id.

Under RCW 9A.44.020(2), "[e]vidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section...." Subsection (3)(d) provides a procedure by which the court may admit such evidence if it finds the evidence:

> is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant.

One purpose of the statute is to eliminate prejudicial evidence of prior sexual conduct of a victim which often has little, if any, relevance on the issues for which it is usually offered, namely, credibility or consent. State v. Hudlow, 99 Wn.2d 1, 16-17, 659 P.2d 514 (1983). The statute was not intended, however, to establish a blanket exclusion of evidence relevant to other issues that may arise in prosecutions for rape. State v. Carver, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). Evidence of prior sexual conduct may be relevant and admissible if it is "demonstrated that the evidence will make it more probable or less probable that [the alleged victim] consented to sexual activity on this

occasion." Hudlow, 99 Wn.2d at 17. The admissibility of such evidence is within the sound discretion of the trial court. Id.

Savage argues that the video clips are relevant to his defense because they support his theory that K.D. consented to acts of erotic asphyxiation and sexual intercourse. He cites Carver in support, but the case is inapposite. In Carver, the defendant was charged with indecent liberties and statutory rape of his stepdaughters. He sought to introduce evidence that the stepdaughters had experienced similar sexual abuse by their grandfather and a friend, to "rebut the inference that the only way two young girls would have knowledge of such sexual matters was because the defendant had sexually abused them as charged." 37 Wn. App. at 123. The trial court excluded the evidence.

On appeal, we reversed holding that the trial court erred in analyzing the evidence under the rape shield statute because it concerned "prior sexual abuse, not misconduct, of a victim." Id. Stated differently, because being a victim of sexual abuse is not "sexual behavior," the admission of such evidence is not controlled by the rape shield statute. Here, however, it is uncontested that the evidence sought to be admitted, K.D.'s alleged viewing of sexually explicit video clips, was sexual behavior. Thus, its admission is necessarily limited to the confines of the rape shield statute.

A more analogous case is State v. Posey, 161 Wn.2d 638, 167 P.3d 560 (2007). There, the defendant sought to introduce a draft e-mail from the victim's computer as evidence that she would have consented to violence and rape. The e-mail had been written by the victim around the time that she had met the defendant, but it was neither

addressed to nor sent to him. Id. at 642. According to the offer of proof, the draft stated that she would "'enjoy'" being raped and that she wanted a boyfriend who would "'choke her'" and "'beat her.'" Id. The Supreme Court found that the e-mail was not probative of consent because it was neither addressed to nor sent to the defendant, and it "described only the potential prior sexual misconduct or potential sexual mores, rendering the admission of the e-mail violative of the rape shield statute." Id. at 649.

Here, as in Posey, the trial court found that the video clips were neither relevant nor probative of consent because there was no evidence that K.D. had actually engaged in the depicted activities. The trial court's ruling differentiated between actual sexual conduct versus evidence of interest; "[s]howing an ongoing interest is a far cry from engaging in a particular kind of sexual activity." VRP (11-07/12) at 822. The court stated that it "need[ed] some evidence that [K.D.] was actually engaged in this activity as a past sexual conduct. You know, there has been no evidence presented that the defendant watched the pornography with the victim. There is no evidence that the defendant had access to this pornography on the victim's computer. There's no evidence that the victim had engaged in sexual activity that involved bondage and asphyxiation with the defendant or with anyone else." Id. at 823.

We agree with the trial court's conclusions. Because there was no evidence that K.D. had ever engaged in the activities depicted in the video clips, even if she had viewed them, that does not make it more or less probable that she consented to intercourse with Savage or that she initiated her own strangulation. The evidence

excluded by the trial court was irrelevant and its exclusion did not deprive Savage of his constitutional right to present a defense.[1]

Savage next contends that the trial court violated his due process rights when it refused to instruct the jury that the State had to prove that K.D. was alive at the time of penetration. Br. of Appellant at 21-22. Savage proposed the following instructions:

> A person commits the crime of Rape in the First degree when he engages in sexual intercourse with another living person, knowing the other person is living, by forcible compulsion when he kidnaps the other person or inflicts serious personal injury. CP at 275.

> To convict the defendant of the crime of rape in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about August 17, 2010, the defendant engaged in sexual intercourse with [K.D];
> (2) That [K.D.] was living at the time;
> (3) That the defendant knew [K.D.] was living…. CP at 276.

> A person is no longer living when an individual who has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all functions of the entire brain, including the brain stem. CP at 277.

The trial court rejected these instructions, finding that "the term 'living' is not in the statute," but recognized that rape in the first degree requires that the victim be alive. VRP (12/16/13) at 1903. The court also rejected the insertion of a *mens rea* element because "[t]he rape statute does not include a *mens rea* element requiring that the

---

[1] We also reject Savage's argument that the video clips are relevant because they "create[] reasonable doubt about whether K.D. was as sexually naïve as the prosecution tried to make her out to be." Br. of Appellant at 19. The argument fails because the State's basis for arguing that K.D. was particularly vulnerable was based on her physical and cognitive limitations, not on evidence of her lack of sexual experience.

9

defendant know that the victim was living... whether he thought K.D. was dead or alive at the time of the act is not an issue." Id. Savage's trial counsel then objected to the court's failure to give some instruction that defined "death" and/or included statements on "whether or not the victim was alive or that the defendant knew she was alive." VRP (12/16/13) at 1908.

On appeal, Savage assigns error only to the trial court's failure to instruct the jury that K.D. had to be alive at the time of penetration. He concedes that the portion of the proposed instruction related to *mens rea* was legally incorrect and that trial counsel did not propose an alternate instruction.[2]

We review jury instructions de novo for errors of law. Anfinson v. FedEx Ground Package System, Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). As to the aggravating circumstance, the jury was instructed that the State's burden was to establish beyond a reasonable doubt that the "murder was committed in the course of, in furtherance of, or in immediate flight from rape in the first degree." CP at 334. Thus, the State was not required to prove that Savage committed the crime of first degree rape but only that the murder had occurred during an attempt to commit or flee from the crime. State v. Golladay, 78 Wn.2d 121, 131, 470 P.2d 191 (1970) (overruled on other grounds by State v. Arndt, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976)); State v. Diebold, 152 Wash.

---

[2] In light of Savage's concession that his proposed instruction "was legally incorrect," the State argues that he failed to preserve for appellate review his challenge to the court's failure to give the instruction. Br. of Appellant at 29-30. In general, "[n]o error can be predicated on the failure of the trial court to give an instruction where no request for such an instruction was ever made." State v. Kroll, 87 Wn.2d 829, 843, 558 P.2d 173 (1976). But here, the record shows that his proposed instruction included the "living" language, the trial court rejected that specific language separately from *mens rea* component, and Savage verbally objected to the trial court's rejection. Under these circumstances, the claimed error is sufficiently preserved for our review. Accordingly, we need not address Savage's claim that his lawyer was ineffective for failing to propose a "legally correct" instruction. Br. of Appellant at 29-31.

68, 72, 277 P. 394 (1929)). <u>See</u> <u>also</u> <u>State v. Hacheney</u>, 160 Wn.2d 503, 514, 158 P.3d 1152 (2007). As the court explained in <u>Golladay</u>:

> As to when a homicide may be said to have been committed in the course of the perpetration of another crime, the rule is ....
>
> 'It may be stated generally that a homicide is committed in the perpetration of another crime, when the accused, intending to commit some crime other than the homicide, is engaged in the performance of any one of the acts which such intent requires for its full execution, and, while so engaged, and within the Res gestae of the intended crime, and in consequence thereof, the killing results. It must appear that there was such actual legal relation between the killing and the crime committed or attempted, that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it. In the usual terse legal phraseology, death must have been the probable consequence of the unlawful act.'

Savage contends only that the jury should have been instructed that the State bore the burden of proving that K.D. was alive at the time of penetration. He does not contend that the evidence was insufficient to establish that K.D.'s death occurred during the course of or in furtherance of his attempt to commit the crime of first degree rape. And because that was all the State was required to prove in order to establish the aggravating circumstance, whether K.D. was alive when Savage completed the crime is irrelevant.

Savage cites no Washington authority in support of his argument to the contrary. Instead, he relies primarily on <u>People v. Sellers</u>, 203 Cal.App.3d 1042, 250 Cal.Rptr. 345 (1988), but the case is inapposite. In <u>Sellers</u>, the defendant was convicted of the completed crimes of murder and rape, in addition to a special circumstance allegation that the murder was committed while the defendant was engaged in committing rape. The trial court refused to instruct the jury that it "could not find rape or the special

circumstance of murder during the commission of rape if the jury believed the victim was dead at the time sexual intercourse occurred." Id. at 1050. On appeal, the court reversed. It concluded that because the penal code defined the completed crime of rape as "'an act of sexual intercourse accomplished with a person,'" the victim must necessarily be alive when the crime is committed. Id. (quoting California Penal Code section 261). But the court also stated that "'[w]hen a conviction of first degree murder is based on a theory of killing during an attempted rape, it is irrelevant whether the victim was already dead at the time of penetration.'" Id. at 1053, (quoting People v. Booker, 69 Cal.App.3d 654, 666, 138 Cal.Rptr. 347 (1977)). Sellers, is of no help in this case because Savage was neither charged with nor convicted of the crime of rape. Thus, the State bore no burden to prove that K.D. was alive when Savage completed the crime and the trial court correctly refused to instruct the jury thereon. There was no error.

Affirm.

WE CONCUR:

12