# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77101-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALAN GOODRICH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: September 10, 2018 |

PER CURIAM — Alan Goodrich appeals his conviction and sentence, arguing that the prosecutor's statements during both opening statements and closing arguments prejudiced the jury's verdict. To demonstrate that a prosecutor committed misconduct, the defendant must show that the comments were both improper and prejudicial. The defendant has failed to show that the prosecutor's statements were improper and prejudicial. We affirm.

## FACTS

Alan Goodrich and Sterling Henson developed a friendship in January 2016. At the time, both men were homeless and living with their partners, Laura Darby and Jennifer Tiede, respectively, in different homeless camps in Auburn. Goodrich and Henson occasionally saw one another at church-sponsored free meal events until March 2016, when the Washington Department of Fish and Wildlife emptied Goodrich's camp in the Game Farm Wilderness Park. At that point, Henson suggested that Goodrich and Darby move in above their own camp located in the remote hillside off Highway 18. The couples went from seeing each other a few

times a month to nearly daily, as they would all dine together, often multiple times per day, at Henson and Tiede's camp. Tiede did almost all the cooking on their camp stove. While the couples had initially agreed to split the cost of food and propane for the camp stove, that became a subject of contention. Because the couples regularly prepared meals and dined together, Goodrich left his cooler at Henson and Tiede's camp, where it was used to store dry goods.

On August 23, 2016, Goodrich and Henson set off to get propane for the camp stove. Henson returned to his camp without Goodrich. Later that day, Goodrich appeared at Henson's camp, demanding his cooler back. According to both Tiede and Henson, Goodrich was screaming. While Tiede was emptying out the cooler, Goodrich and Henson got into an altercation. Goodrich sprayed Henson with mace and repeatedly hit him with a bat. Tiede tried to intervene, but Goodrich also sprayed her with mace and hit her multiple times with his bat. Henson suffered from a cut to the forehead, a fractured skull, and a fractured sternum, while Tiede suffered from a cut to the forehead, a fractured skull, and a broken arm that required surgery.

The State charged Goodrich with two counts of assault in the second degree, each count carrying a deadly weapon enhancement. A jury found Goodrich guilty as charged, and the trial court imposed a 44 month sentence.

## ANALYSIS

Goodrich asserts that the prosecutor made improper statements in both opening statements and closing arguments, thus depriving him of the right to a fair trial. A prosecutor must enforce the law by prosecuting those who have violated the peace and dignity of the state by breaking the law. State v. Walker, 182 Wn.2d

-2-

463, 476, 341 P.3d 976 (2015) (quoting State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011)). A prosecutor is afforded wide latitude to argue reasonable inferences from the evidence, but he should not use arguments calculated to inflame the passions or prejudices of the jury. In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (quoting AM. BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE std. 3-5.8(c) (2d ed. 1980)). To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. Id. Where the statements were not objected to at trial, the defendant is deemed to have waived any error unless the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

Goodrich first asserts that the prosecutor's opening statements were improper. A prosecutor's opening statements must be based upon the anticipated evidence and the reasonable inferences which can be drawn therefrom. State v. Kroll, 87 Wn.2d 829, 835, 558 P.2d 173 (1976).

The prosecutor began his opening statements with:

> Well, spring training for the Mariners started today I believe. Pitchers and catchers reported, but you won't hear the crack of the bat until those hitters actually arrive. And when you're talking about crack of the bat here in court, it has a far different meaning and different sound.
>
> Crack of the bat here doesn't . . . refer to baseball hits, but hits to the body, hits with a wooden bat to the body, hits with this wooden bat to the skull, not one person, but two people, the thumps and the sounds of that multiple times on the skull, fractured skull, another fractured skull, the thumps and the sounds of a bat to someone's arm defending them, to the body again, broken sternum, broken arm.

First, Goodrich asserts that the baseball reference was improper but fails to make an argument as to its impropriety. We see nothing inherently improper about referring to a professional sports team in one's opening statement. We thus reject this claim.

Second, Goodrich asserts that analogizing the "crack of the bat" with the sounds of a bat hitting the victims' skulls was an improper appeal to the jury. When the evidence supports a brutal crime, the prosecutor may use graphic language so long as it is consistent with the evidence. Kroll, 87 Wn.2d at 834-35 (finding no abuse of discretion when the prosecutor used a detailed description of the victim's murder in opening statements). Both Henson and Tiede testified as to the violent nature of the assault. Tiede testified that she was "bleeding all over the place" and that "stuff was hanging out of [her] head." Similarly, Henson testified that "I knew it was broke. I heard that sucker crack right on my head." Because the prosecutor's opening statements reflected the evidence, the statements were not improper.

Goodrich also claims that the prosecutor improperly mocked the importance of Goodrich's cooler in his closing statements when the prosecutor said:

> Well, this must be the coolest cooler in the world that the defendant would arm himself with pepper spray, the kind that hikers take out in the woods in bear country, with a baseball bat, a bat with a barrel bigger than anything Edgar Martinez uses, and risk going down to Sterling and Jennifer's camp.

Similar to opening statements, prosecutors are given a wide latitude to make reasonable inferences from the evidence presented at trial in their closing arguments. State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). Goodrich asserts that the prosecutor's reference to the cooler was intended to mock his

homeless condition. The State contends that it was not intended to mock Goodrich's homelessness, but rather to attack the credibility of his self-defense claim. It is undisputed that Goodrich went to Henson and Tiede's camp to retrieve his cooler that day and that the altercation happened at that time. Moreover, it is undisputed that Goodrich had mace and a baseball bat in his possession. Again, the prosecutor's statements summarized the evidence presented at trial. Thus, the statements were not improper.

Even assuming the defendant proved the remarks were improper, misconduct does not constitute prejudicial error unless there is a substantial likelihood it affected the jury's verdict. State v. Gauthier, 189 Wn. App. 30, 37, 354 P.3d 900 (2015). When the defendant fails to object at trial, the defendant must also prove that the statements were so flagrant or ill-intentioned that any prejudice could not have been cured by a timely objection. Id. at 38. Goodrich did not object to any of the statements at trial, nor has he proved that a timely curative instruction would not have neutralized any prejudice. We hold that the prosecutor's statements were neither improper nor prejudicial.

Affirmed.

FOR THE COURT: