## Herbert Balee (Alias Nick Balee) v. Commonwealth.

(Decided May 6, 1913.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Trial—Evidence—Order of Introduction.—It is error to require the defendant to stand up by the side of the prosecuting witness during the argument of the Commonwealth attorney that the jury may see clearly the relative size of the two, as all the evidence should be introduced before the argument for the defendant is made.

2. Indictment—Continuation of Former Prosecution—When Question Should Not be Submitted by Instruction.—The indictment showing on its face that it is a continuation of a former prosecution, there being no contrary evidence, and the orders of the court being read, the question should not be submitted to the jury by an instruction.

3. Criminal Law—Wilful and Malicious Shooting—Trial—Evidence—Instructions.—There being evidence warranting the conclusion that the defendant wounded another in a reckless shooting and not in a sudden affray and sudden heat and passion, an instruction submitting to the jury the common law offense should have been given.

4. Appeal—Granted as Matter of Right in Felony Case—Suspension of Judgment.—When the defendant prays an appeal it should be granted as a matter of right in a felony case, and as a matter of right if he so desires it, the judgment should be suspended for sixty days.

LOUIS I. IGLEHEART for appellant.

JAS. GARNETT, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General for appellee.

Opinion of the Court by Chief Justice Hobson— Reversing.

On the Saturday evening before Christmas in December, 1911, Herbert Balee and Horace Kelley, who were both negroes and drinking heavily, were walking out a road leading out of Owensboro. It was about eleven o'clock at night and very dark. They were on their way to the house of an aunt of Horace Balee, where he was going to spend the night. They heard a cart coming up behind them and stopped. When the horse got up to them, either they stopped the horse or the horse stopped. There were two white men in the cart. One of the negroes walked to the cart and asked the white men where they were going. Thy told him they were going close to Calhoun. They talked pretty friendly at first and one of them wanted to ride. He had a pistol in his hand, which he was swinging around. He asked Morris, one of the white men, if he had a gun. Morris said yes, and he said "Shoot your gun." Morris didn't have a gun but a bottle of whiskey. The negro then wanted Sharp, the other white man, to take a drink of whiskey out of a bottle he had. Sharp declined and the negro asked Morris to take a drink. Morris took the bottle and turned it up to his mouth to get rid of him, making out he was drinking, but not drinking any. The negro then started from the cart, and said again, "Shoot your gun." They were only a little way from him and driving slowly, and he commenced shooting. The second shot hit Sharp and one shot went through Morris's hat. Morris then asked him if he was shooting at them and they said no. Morris and Sharp then turned the cart around to go back to Owensboro as Sharp was shot, and the negro commenced shooting again. When the negro with the pistol came up to the cart his companion said to him, "Them white folks ain't going to let you ride; there ain't no room in there." He answered, "I'll make room." Herbert Balee was indicted for the willful and malicious shooting of Morris. On the trial of the case, the negro, Kelley, testified that it was Balee who had the pistol and did the shooting, while Balee testified that he had no pistol, and it was Kelley who had the pistol and did the shooting. The two white men had never seen either of the two negroes before. It was drizzling rain and dark; but they both testified that it was the larger negro of the two that had the pistol and did the shooting, and that Balee was the man. The jury found Balee guilty of willful and malicious shooting, under section 1166 Ky. Stat., and the

court having refused his motion for new trial, and entered judgment on the verdict, he appeals.

In his closing argument to the jury the Commonwealth attorney called the defendant and had the defendant to stand up before the jury by the side of the prosecuting witness, Horace Kelley, to which the defendant at the time objected; and his objection being overruled by the court, he excepted. It is insisted that this was erroneous and very prejudicial to the defendant for the reason that when they were not standing together, it was not easy to say which was the larger of the two. The Code of Practice provides that the Commnowealth attorney after the statement of the case against the defendant must then offer the evidence in support of the indictment; (section 220-221) that the defendant or his attorney may then state the nature of his defense and the law and evidence on which he relies in support of it, or he may at his option, make this statement before the evidence for the Commonwealth is introduced; that the defendant must then offer his evidence in support of his defense; (sections 222-223), that the parties may then respectively offer rebutting evidence only unless the court for good reason in furtherance of justice permit them to offer evidence upon their original case, and that the court shall on motion of either party, and before any argument to the jury, instruct the jury in writing on the law applicable to the case. It is important to the defendant that all the evidence which is to be offered against him shall be offered before the argument of his counsel is made; and it may be very prejudicial to him to allow any additional evidence after his counsel has argued his case to the jury on the evidence that is before the jury. In Cupp v. Com., 87 Ky., 35, after the argument to the jury for the defendant had closed and the attorney for the Commonwealth had begun his argument, he had the prosecutor to come around where he was and when he had done so, the attorney put his hands on the face of the prosecutor and said to the jury, "Gentlemen, look at the scar on his face. Is that worth only $50?" This was all objected to by the defendant, and his objection being overruled, he excepted. Reversing the conviction for this reason, the court said:

"It is not the interest, nor is it presumed to be the intention of the Commonwealth to procure the conviction of persons accused of crime by illegal means. The Criminal Code, in order to procure fair trials, prescribes the mode and order in which the testimony may be given to

the jury, and courts cannot afford to permit a departure therefrom when the object and effect is to give to either party an undue advantage of the other."

The error in this case was more prejudicial and serious than in the case cited; for here perhaps the most convincing evidence was given after the argument of his case by his counsel to the jury, and the whole question was one of identity.

It appears from the record that an indictment was found on January 9, 1912. This indictment was quashed on January 13, 1913, and on the same day another indictment was returned under which the trial was had, the latter indictment aptly showing on its face that it was a continuation of the former prosecution. There was no confliction in the evidence on the question, and therefore there was no need for the court to submit to the jury the question whether the latter indictment was returned in lieu of the former, and on another trial this part of instruction 1 will be omitted.

The first instruction was given under section 1166 Ky. Stat. The second instruction which was based upon section 1242 Ky. Stat., told the jury in substance that if the defendant did the shooting in sudden heat and passion or in a sudden affray, without previous malice, they should find him guilty under that section. But there was no evidence in the case tending to show that the shooting was done in sudden affray or in sudden heat and passion. There was evidence showing that the negro had been shooting off his pistol celebrating the coming of Christmas before the white men drove up, and there were circumstances tending to show that the shooting done after they drove up was of a similar character. If the defendant fired his pistol recklessly the jury had a right to infer malice from the recklessness of the act. But whether or not the shooting was maliciously done was a question for the jury on all the circumstances. If the shooting was not malicious, but the result of the wanton reckless or grossly careless handling of the pistol, the offense is not covered by section 1242 Ky. Stat., but is punishable at common law with fine and imprisonment. This view of the case should have been submitted to the jury by an appropriate instruction; that is, in lieu of instruction 2, the court should have told the jury that if they did not believe from the evidence beyond a reasonable doubt that the defendant wilfully and maliciously shot George Sharp with a pistol with the intention to kill him as set out in No. 1,

but did believe from the evidence beyond a reasonable doubt that in Daviess County and within twelve months before Jan. 9, 1912, he recklessly, wantonly or in gross carelessness, shot off his pistol, and by reason of such recklessness, carelessness or wantonness in handling his pistol, shot and wounded George Sharp without malice, they should find him guilty of unlawfully wounding another, and fix his punishment at fine or imprisonment in their discretion, or both in their discretion. (Ewing v. Com., 129 Ky., 237; Smith v. Com., 133 Ky., 532; Lewis v. Com., 140 Ky., 652; 2 Roberson Criminal Law, section 537).

After his motion for new trial was overruled, and judgment entered, the defendant prayed an appeal to this court which was granted, and he moved the court to suspend the judgment against him, until the expiration of the period within which he was required to lodge a transcript of the record in the clerk's office of this court. The court overruled the motion and he excepted. Subsection 1 and 2 of section 336 of the Criminal Code, governing appeals in felony cases, provide:

"The appeal must be prayed during the term at which the judgment is rendered, and the prayer noted on the record in the circuit court. The appeal shall be granted as a matter of right.

"When an appeal is prayed the court shall, if the defendant desire it, make an order that the execution of the judgment be suspended until the expiration of the period within which the defendant is required to lodge a transcript of the record in the clerk's office of the Court of Appeals."

The court is given no discretion under this section and it is incumbent upon the circuit court when the appeal is prayed during the term in which the judgment is rendered, to grant the appeal as a matter of right, and also as a matter of right, if the defendant desires it, to make an order that the execution of the judgment be suspended until the expiration of the period within which the defendant is required to lodge a transcript of the record in the clerk's office of the Court of Appeals.

Judgment reversed and cause remanded for further proceedings consistent herewith.