[No. 1463-2. Division Two. December 2, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE MADRY, *Appellant*.

*Perry J. Robinson,* for appellant.

*Jon R. Harlan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

ARMSTRONG, J.—The defendant, Lawrence Madry, appeals from a jury conviction of first-degree assault. The appeal has raised important issues concerning the evidence and instructions which may be presented to the jury in support of defendant's theory that he was justified in using a deadly weapon to recover his property. We find that the trial judge did not err in excluding the evidence and refusing the instruction. We also do not agree with Madry's other assignments of error.

The facts of the case are somewhat in dispute, but the evidence supports the following. Acquaintances Madry and John Lowell were drinking in a tavern when someone stole $48 from Lowell's wallet. Lowell accused Madry of taking the money. The two men separated and met again at a hotel, where Lowell demanded to see Madry's wallet to determine if it contained any of the money stolen from him, which Lowell had folded in a unique way. After Madry laid money from his wallet on the table, $50 was taken, Madry believing Lowell had done so. Outside the hotel, Madry accused Lowell and demanded his money. A police officer who was summoned suggested that they each file a complaint. Madry returned to the hotel, obtained a pistol and followed Lowell. Although Madry testified that he obtained the gun only to scare Lowell and that the gun discharged accidentally during a struggle, Lowell and two witnesses (including a police officer) testified differently. Their testimony was that there was a struggle, the gun dropped and Lowell began to back away with his hands in the air, and then Madry aimed the gun at him and fired.

Madry's theory of the case was that his use of a gun was a reasonable use of force in attempting to recover property. He assigns error, therefore, to the failure of the court to instruct that "the use of a weapon is not necessarily the use of unnecessary force."[1] We conclude that the court did not

---

[1] Defendant's proposed instruction 2 read: "You are instructed that it is lawful for the owner or person in possession of personal property to pursue another person who has committed a theft of his property and to recapture the things stolen. In retaking them from the thief, he may

err in refusing this instruction because as proposed it is a misstatement of the law.

The use of force to recover property is sanctioned in some instances by RCW 9.11.040, which provides in relevant part:

> The use, attempt, or offer to use force upon or toward the person of another shall not be unlawful in the following cases:
>
> . . .
>
> (3) Whenever used by a party about to be injured, or by another lawfully aiding him, in preventing or attempting to prevent an offense against his person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his possession, in case the force is not more than shall be necessary;

This court has previously noted the ambiguities in subsection (3). *State v. Murphy*, 7 Wn. App. 505, 500 P.2d 1276 (1972), *citing Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942). In both these cases, the court found it unnecessary to rule on the ambiguities and grounded the decision on another basis. One of these ambiguities is whether "about to be injured" refers to injury in the general sense or injury to one's person. If the former is settled upon, reasonable force may be used to prevent injury to enjoyment of one's property. If the latter, force may not be used to recover property where there is no threat to the owner's person. Second, the statute says that force is not unlawful in the enumerated situations, but does not state that it is unlawful in all other situations.

We, too, find it unnecessary to resolve these ambi-

use such force as may be reasonably necessary to accomplish his purpose without liability except for excess force. In this connection, I further instruct you that the use of a weapon is not necessarily the use of unnecessary force."

The trial court gave instruction 16B, which read: "You are instructed that it is lawful for the owner or person in possession of personal property to pursue another person who has committed a theft of his property and to recapture the things stolen. In retaking it from the person committing the theft he may use such force as may be reasonably necessary to accomplish his purpose without liability except for excess force."

guities because we hold that as a matter of law the use of deadly force by a private person to recover a small amount of money, stolen from him by someone he knows, is unreasonable. Though generally the question whether the amount of force used was reasonable is a matter for the jury, *Peasley v. Puget Sound Tug & Barge Co., supra; State v. Murphy, supra,* there are instances in which it has been held that the use of deadly force was unreasonable as a matter of law. In *State v. Murphy, supra,* a property owner brandished a gun at environmental control agents who were inspecting the premises of his construction business. We held there that

> Under the statute [RCW 9.11.040] or under the common law, the use of a deadly weapon by a private party to eject a mere nonviolent, nonboisterous trespasser, who, at most can be understood to be interfering with a private party's intangible proprietorial interest, is, as a matter of law, not a justifiable use of force.

*State v. Murphy, supra* at 514. In *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952), it was held that one may not resist with deadly force an unlawful arrest which merely threatens to deprive him of his liberty and not to do great bodily harm.[2]

In the instant case there was not even a threat to Madry's personal liberty. He was attempting to recover the paltry sum of $50 from a man he knew and could identify. A small sum of money is not worth the injury to human life or even the threatening of such injury which results from the use of deadly force. As we said in *State v. Murphy, supra*:

> There is a recklessness—a wanton disregard of humanity and social duty—in the threatened use of deadly force to repel what at most could be considered a petty inconvenience, which is essentially wicked and which the law

---

[2] These cases and the case at bar are clearly distinguishable from situations where great bodily harm has been inflicted or is threatened. *See State v. Clarke,* 61 Wn.2d 138, 377 P.2d 449 (1962), where the court sanctioned the use of deadly force by a private person against one who had committed a felony by stabbing another and attempted to flee.

abhors. The law forbids such a menacing of human life for so trivial a cause.

*State v. Murphy, supra* at 515.

Madry also challenges the trial court's refusal to admit the testimony of an attorney and three judges. It was to be introduced as expert testimony in response to a hypothetical question which basically asked whether Madry would have been successful in a civil action against Lowell to recover his money.

■ At times, attorneys are experts on certain matters because the law is a highly technical field. For instance, it has been held that in a libel action, the competency of a judge can be the subject for expert testimony. *Lynch v. Republic Publishing Co.*, 40 Wn.2d 379, 243 P.2d 636 (1952). This holding reflects the general rule that expert testimony is admissible when it involves a skill or knowledge beyond the understanding of the ordinary person. *Oyster v. Dye*, 7 Wn.2d 674, 110 P.2d 863, 133 A.L.R. 720 (1941).

In the case at bar, the attorneys were to testify that Madry would not have recovered his money in a civil action against Lowell and that therefore, his use of a gun was reasonable. Viewed in this light, it was clear that the actual likely success of a civil action is irrelevant. What is important is whether the reasonable man would have believed that such a suit would be successful and, in light of the answer to this, whether the force used would have been deemed necessary by a reasonable man. Therefore, where the force used is not unreasonable as a matter of law, it is the jury's function to determine what the reasonable man would have believed. *See State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965).

■ Madry also contends that it was reversible error to admit testimony by Lowell's physician on the severity of his wounds, the nature of treatment provided and the probability of recovery because it was irrelevant and inflammatory. Evidence is relevant if it is probative of a proposition provable in the case and if it throws any light on a con-

tested matter. *See State v. Rook,* 10 Wn. App. 484, 519 P.2d 252 (1974) and authorities cited therein. Madry was charged with first-degree assault with intent to kill. Evidence of the location of the wound, the vulnerability of that location and the likelihood that such a wound is mortal was probative of Madry's intent to kill Lowell.

Finally, Madry seeks reversal because during closing argument, the prosecutor held Madry's gun with both hands and aimed it at Lowell. There was evidence presented which indicated that Madry had held the gun in that manner. The prosecutor was only referring to the evidence and drawing reasonable inferences from it. No reversible error was committed. *State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969).

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 6, 1975.

Review denied by Supreme Court March 10, 1975.