**Denzil "Peck" PRICE, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

No. 2000–SC–0213–DG.

Supreme Court of Kentucky.

Nov. 21, 2001.

Mark Wettle, Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant, Denzil "Peck" Price, was convicted by a Clay Circuit Court jury of assault in the first degree and sentenced to ten years in prison. The Court of Appeals affirmed. We granted discretionary review to consider the propriety and/or the prejudicial effect of a demonstration conducted during the prosecutor's closing argument in which the prosecutor and the victim reenacted the crime. Although we find the demonstration to have been improper, we conclude that the trial judge did not abuse his discretion in denying Appellant's motion for a mistrial; thus, we also affirm.

On November 30, 1995, Russell Wolfe, a fish and wildlife officer with the Kentucky Department of Fish and Wildlife Resources, was driving home in his official state vehicle when he encountered a pickup truck being operated in a reckless manner. Wolfe activated his blue emergency lights and gave pursuit, ultimately follow-

ing the pickup truck into Appellant's driveway. The owner and operator of the pickup truck was Earl Dean Fields. Appellant was riding as a passenger. Both were highly intoxicated. Fields testified at trial that the two had consumed two "fifths" of vodka and an undetermined quantity of beer that day. Since Appellant was already at his home, Wolfe directed him to leave the scene and go into his house. Wolfe then used his two-way radio to inquire as to the status of Fields's driver's license. Meanwhile, Appellant armed himself with a .410 caliber shotgun and returned to the driveway. When Wolfe looked up from his radio, Appellant was standing approximately three feet away with the barrel of the shotgun aimed directly at his (Wolfe's) forehead. Wolfe testified that he instinctively grabbed the barrel of the shotgun with his left hand and pushed it down away from his head. When he did so, Appellant pulled the trigger and shot Wolfe in the right thigh. Though he described the incident during his testimony, Wolfe did not attempt to demonstrate or otherwise reenact the crime. In fact, the shotgun was not introduced into evidence until after Wolfe testified.

Fields testified that he did not see Appellant point the gun at Wolfe but did see Appellant and Wolfe struggling over the weapon before the shot was fired. Appellant did not testify, but the jury heard an audiotaped statement he made to a state police detective shortly after the shooting. In that statement, Appellant admitted that he would have shot Wolfe in the head had Wolfe not grabbed the gun. The jury was instructed on assault in the first degree, i.e., intentionally causing serious physical injury by means of a deadly weapon, KRS 508.010(1)(a), but not on assault in the second degree, i.e., wantonly causing serious physical injury by means of a deadly weapon, KRS 508.020(1)(c). During clos-

ing argument, defense counsel argued that despite Appellant's drunken statement to the police detective, the shooting may have been accidental and might not have occurred had Wolfe not grabbed the gun.

Wolfe sat at the prosecutor's counsel table during the entire trial, including closing arguments. A review of the trial videotape reveals that, during the course of his closing argument, the prosecutor picked up the shotgun, pointed it directly at Wolfe's head from the stated distance of about three feet, and remarked: "As he tells you, Officer Wolfe tells you, when he gets back, what does he see? Three feet away from him?" At this point, Wolfe, as if in slow motion, raised his left hand above his head, then returned it to his side. The prosecutor continued: "What is he to do?" Wolfe, again as if in slow motion, raised his left hand above his head. The prosecutor continued: "Now, Officer Wolfe, you stand right there while I shoot you in the head." As this statement was made, Wolfe placed his left hand on the barrel of the shotgun and pulled it down toward his right thigh, thus completing the reenactment of the crime. The prosecutor concluded: "He does what anybody else does. He jerked it. What was he to do?"

Defense counsel immediately objected and moved for a mistrial. At a hearing in chambers, both Wolfe and the prosecutor vehemently denied that the demonstration was pre-planned, though Wolfe stated in response to an inquiry from the trial judge that he did not know whether his act of grabbing the gun was voluntary or involuntary. The trial judge overruled the motion for a mistrial and admonished the jury to disregard the demonstration.

■ Wolfe's participation in the reenactment of the crime during the prosecutor's closing argument, whether planned or unplanned, was highly improper. Case

law on this issue is, thankfully, sparse. In *Cupp v. Commonwealth*, 87 Ky. 35, 7 S.W. 405 (1888), it was held reversible error for the prosecutor to call the victim of an assault before the jury and, putting his hands on the face of the victim, say: "Gentlemen, look at that scar on his face. Is that worth only fifty dollars?" And in *Stacy v. Williams*, 253 Ky. 353, 69 S.W.2d 697, 707 (1934), it was held improper to permit a personal injury damages plaintiff to exhibit his injured leg to the jury while his attorney referred to and commented on it during closing argument. Closer to what occurred here is the case of *Robinson v. Kathryn*, 23 Ill.App.2d 5, 161 N.E.2d 477 (1959), wherein a plaintiff who had been injured in a motorcycle accident was permitted to demonstrate, during his attorney's closing argument, the manner in which he was seated and would be driving the motorcycle, where his arms would be located, and how his arms would be affected by the approach of the defendant's vehicle.

While it would have been proper for attorney for plaintiff to have seated himself in a chair with his arms akimbo, in typical motorcycle driver style, and to have used any reasonable technique to demonstrate such physical fact, the employment of his client in this fashion amounted to a use of demonstrative evidence which was clearly improper and afforded no opportunity for cross examination, defense or reply. The place for demonstrative evidence and the time for demonstrative evidence is during the course of the trial and prior to final argument. Final argument may properly employ demonstrations by the attorney, if such demonstrations are reasonably sustained by the evidence, but the technique of using the injured plaintiff in a visual demonstration requiring movement and activity on his part would open the door to strange and completely unsound demonstrations which in the end would defeat the ends of justice for all litigants.

*Id.* at 479.

 Nevertheless, it has long been the law in Kentucky that an admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it. *Knuckles v. Commonwealth*, Ky., 261 S.W.2d 667, 671 (1953); *Thomas v. Commonwealth*, 196 Ky. 539, 245 S.W. 164, 166 (1922). Here, both Appellant and Wolfe agreed that Appellant pointed the shotgun at Wolfe's head, that Wolfe grabbed the barrel and pulled it down away from his head, and that Appellant shot Wolfe in the right thigh. The only issue in dispute was Appellant's *mens rea* at the time the shot was fired, and the demonstration neither proved nor disproved the necessary element of intent. Thus, the improper demonstration was cured by the trial judge's admonition and does not require reversal for a new trial.

 The only other issue raised on appeal pertains to a motion for a new trial predicated upon an alleged incompetent juror. Juror No. 57, who sat as a juror on the case, had indicated on her juror qualification form that she was "mentally unstable" and had attached a letter from her psychiatrist who opined that she was "too unstable emotionally at this time to perform juror duties." However, Appellant did not ask that Juror No. 57 be excused for cause, nor could this information be deemed newly discovered evidence, since Appellant's attorney had Juror No. 57's qualification form in his possession at the time he exercised his peremptory strikes. Except on grounds of newly discovered evidence, a motion for a new trial must be

served within five days after the return of the verdict. RCr 10.06(1); *Johnson v. Commonwealth,* Ky., 17 S.W.3d 109, 112 (2000). Appellant's motion was served nine days after the return of the verdict; thus, it was not timely served and was properly overruled.

Accordingly, the judgment of conviction and sentence imposed by the Clay Circuit Court, and the opinion of the Court of Appeals, are affirmed.

LAMBERT, C.J.; JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion with GRAVES, J., joining that concurring opinion.

KELLER, Justice, Concurring.

Although I concur in the result reached by the majority, I disagree with its conclusion that "Wolfe's participation in the re-enactment of the crime during the prosecutor's closing argument, whether planned or unplanned, was highly improper."[1] In my opinion, the latitude we grant to attorneys in closing argument[2] should allow demonstrations that illustrate evidence previously introduced at trial or reasonable inferences drawn from that evidence regardless of whether the prosecution's complaining witness participates in the demonstration. While I recognize that closing argument demonstrations which do not illustrate prior evidence and instead attempt to introduce new demonstrative evidence are improper, the demonstration in this case clearly illustrated rather than presented evidence. I believe trial courts

occupy the best position to assess whether demonstrations risk prejudice, and this Court should review their determinations for abuse of discretion. Although I believe the trial court in this case acted within its discretion when it admonished the jury to disregard this demonstration, I see nothing inherently improper about it, and I fear that today's majority may discourage the use of permissible demonstration during closing argument.

Perhaps my most basic concern with the majority opinion is that it, by failing to outline any criteria upon which trial courts can assess the propriety of closing argument demonstrations, appears to condemn all such demonstrations, or at least those in which the complaining witness participates. I believe this represents a departure from existing case law in which this Court and its predecessor have found the dispositive question to be whether the demonstration adhered to trial evidence and reasonable inferences therefrom.

In *Cupp v. Commonwealth,*[3] the Court emphasized the order of proceedings when it found improper the Commonwealth's displaying of the scarred victim during closing argument: "The Criminal Code, in order to procure fair trials, prescribes the mode and order in which testimony may be given to jury, and courts cannot afford to permit a departure therefrom when the object and effect is to give to either party an undue advantage of the other."[4] Twenty-five years later, in *Balee v. Commonwealth,*[5] the Court referenced the *Cupp* decision and again emphasized the need to separate argument from evidence:

1. Majority Opinion at 59 S.W.3d 878-880 (2001).

2. *See Bowling v. Commonwealth,* Ky., 873 S.W.2d 175, 178–179 (1993); *Williams v. Commonwealth,* Ky., 644 S.W.2d 335, 338 (1982).

3. 87 Ky. 35, 7 S.W. 405 (1888).

4. *Id.* at 407.

5. 153 Ky. 558, 156 S.W. 147 (1913).

In his closing argument to the jury the Commonwealth attorney called the defendant and had the defendant to stand up before the jury by the side of the prosecuting witness, Horace Kelley, to which the defendant at the time objected; and his objection being overruled by the court, he excepted. It is insisted that this was erroneous and very prejudicial to the defendant for the very reason that when they were not standing together, it was not easy to say which was the larger of the two. The Code of Practice provides that the Commonwealth attorney after the statement of the case against the defendant must then offer the evidence in support of the indictment .... *It is important to the defendant that all the evidence which is to be offered against him shall be offered before the argument of his counsel is made; and it may be very prejudicial to him to allow any additional evidence after his counsel has argued his case to the jury on the evidence that is before the jury.* In *Cupp v. Com.*, after the argument to the jury for the defendant had closed and that attorney for the Commonwealth had begun his argument, he had the prosecutor to come around where he was and when he had done so, the attorney put his hands on the face of the prosecutor and said to the jury, "Gentlemen, look at the scar on his face. Is that worth only $50?" ....

The error in this case was more prejudicial and serious than in the case cited;

for *here perhaps the most convincing evidence was given after the argument of his case by his counsel to the jury,* and the whole question was one of identity.[6]

In *Huber & Huber Motor Express v. Martin's Administrator,*[7] a case that involves an issue factually similar to,[8] and interprets,[9] the authority cited by the majority, *Stacy v. Williams,*[10] the Court emphasized the trial court's prime position to assess whether the demonstration prejudiced the defense: "The court knew whether his client had already exhibited it to the jury and whether his counsel calling for him and having him re-expose it was only a repetition of evidence already introduced."[11]

In *Ramey v. Ruth,*[12] the Court saw nothing improper in trial counsel's illustration of the evidence in an automobile accident case with model cars and a blackboard with the accident scene drawn upon it because his demonstration was based in the record:

[D]uring his final argument to the jury counsel for appellees produced a blackboard of his own which had theretofore not been used during the trial, placed toy automobiles upon the board (which contained a drawing of the curve in the roadway depicting the scene of the accident) and used them during the course of his argument. It was claimed that it wholly misrepresented the evidence in the case. *However, there was*

---

**6.** *Id.* at 560–561, 156 S.W. 147 (citations omitted and emphasis added).

**7.** 265 Ky. 228, 96 S.W.2d 595 (1936).

**8.** *See Id.* at 234, 96 S.W.2d 595 ("One of the statements of ... counsel to which they objected reads: 'Come around, John, and roll up your pant leg, and show the jury your leg.' Martin, thereupon, as the record discloses, appeared before the jury, rolled up his pant

leg and exposed to the view of the jury his injured leg.").

**9.** *Id.* at 235, 96 S.W.2d 595.

**10.** 253 Ky. 353, 69 S.W.2d 697 (1934).

**11.** *Huber & Huber Motor Express v. Martin's Administrator, supra* note 7 at 598.

**12.** Ky., 376 S.W.2d 292 (1964).

*no showing made either in the record or in the brief for appellants in what manner counsel allegedly departed from the evidence which had been given and any reasonable inferences which might be drawn therefrom....* [T]his was a magnetized board along which the automobiles could be moved easily and thus counsel could give his interpretation of what actually happened at the scene of the accident. We find nothing that shows he departed from the usual practice of using a blackboard or other device to help illustrate an argument. The board may have been novel and improved, but *we find nothing wrong so long as counsel adhered to the evidence and reasonable inferences.* If he departed from that course, it does not appear of record.[13]

In *Smith v. Commonwealth,*[14] we found no error when the Commonwealth, during its opening argument, conducted a demonstration involving a firearm which was consistent with the evidence later admitted: "The opening statement by the prosecution, ... *and the gun demonstration included in it,* only directed the attention of the jury to the evidence which he expected to prove through the testimony. The explanation of the incident and the demonstration were ultimately supported by the testimony ...."[15] And, in *Wager v. Commonwealth,*[16] we again emphasized that permissible closing argument demonstrations must relate to evidence already in

the record when we reversed the appellant's conviction:

The Commonwealth's attorney told the jury that he had driven past an old fence on the way to the courthouse, and watched a man pull a post from the ground. As the post had brambles growing on it, one could not avoid being scratched removing the post in this way. This was in reference to Matthews' claim that the suspicious scratches found on his chest were caused by brambles on fence posts and not fingernails. Not only did the Commonwealth's attorney discuss the brambly fence post, but he brought a portion of the bramble-covered fencepost into the courtroom as a demonstration to the jury. Although prosecutors have been consistently granted wide latitude by this court in opening and closing arguments, certain behavior exceeds the bounds of what is acceptable and enters the realm of prejudicial error. *The Commonwealth's attorney went beyond the evidence presented,* and pursued another agenda, quite apart from the legal constraints of the case at hand. *Although the Commonwealth claims that the fencepost was merely a reasonable inference drawn from the evidence, we do not agree....*[17]

I would also note that courts in other jurisdictions have found no abuse of discretion when trial courts have permitted closing argument demonstrations supported by the evidence,[18] and have applied the

13. *Id.* at 294.

14. Ky., 734 S.W.2d 437 (1987).

15. *Id.* at 448 (emphasis added).

16. Ky., 751 S.W.2d 28 (1988).

17. *Id.* at 30–31 (citation omitted and emphasis added).

18. *See State v. Ash,* 526 N.W.2d 473, 483 (N.D.1995) ("The demonstration was nothing

more than a vivid visual summarization of the State's view of a large body of evidence that depicted an execution-style killing."); *Gilbert v. State,* 951 P.2d 98 (Okla.Crim.App.1997) (demonstration with firearm); *State v. Dowds,* 253 Ill.App.3d 955, 192 Ill.Dec. 723, 625 N.E.2d 878, 878–880 (1993) ("[T]he prosecutor's demonstration merely showed the jury what seven beers looked like when poured into a container, testimony the jury had already heard from defendant about how he

same standard when the complaining witness or victim participates in the demonstration.[19]

I can find no warrant in the majority opinion for adopting a blanket rule excluding complaining witnesses from participating in otherwise permissible closing argument demonstrations, and I believe our previous opinions have found error in victim-participation closing argument demonstration cases not because of *who* participated in the demonstrations, but because those demonstrations strayed from the record and thereby introduced new evidence. Trial courts should always scrutinize demonstrations during closing argument to prevent the introduction of new evidence, and I believe that they can avoid prejudice—regardless of who participates in the demonstration—by limiting demonstrations during closing arguments to those that illustrate the evidence or reasonable inferences therefrom Here, the demonstration conducted during closing argument mirrored exactly the sworn testimony given by the complaining witness, and I see nothing inherently improper about it.

GRAVES, J., joins this concurring opinion.

had poured seven beers into a 'different container'—namely, himself."); *State v. Bush*, 103 Ill.App.3d 5, 58 Ill.Dec. 482, 430 N.E.2d 514, 521–522 (1981):

> During the State's closing argument, the prosecutor conducted a physical demonstration using the same model to show the position of the victim's body. This demonstration was based on a photographic exhibit introduced at trial and was apparently intended to demonstrate that the defendant could not have turned over Ms. Durbin's body as he had testified he had done. . . .
> *Admission of demonstrative evidence is a matter within the discretion of the trial court. In the instant case we find no abuse of discretion because [the] demonstration[ ][was] based on evidence admitted at trial.*

(citations omitted and emphasis added); *State v. Kroll*, 87 Wash.2d 829, 558 P.2d 173, 185 (1976):

> In final argument the State was allowed to conduct a demonstration in which one man sat astride another, the purpose of which was to demonstrate how the defendant might have sat on the victim, holding her arms and leaving the marks found thereon. The court restricted the matter to a simple showing of position, and cautioned the jury that the demonstration was not evidence. The evidence from the pathologist indicated that the defendant's boots could have caused the marks as indicated. The demonstration merely showed the jury the manner in which it could have been physically accomplished.
> Argument of counsel is limited to the evidence and to fair and reasonable deductions to be drawn therefrom. *We find no abuse of discretion in allowing the prosecutor to demonstrate a reasonable inference from the evidence.*

(citations omitted and emphasis added). *Collins v. State*, 561 P.2d 1373, 1380–1381 (Okla. Crim.App.1977) (approving demonstration and relying extensively upon a turn-of-the-last-century published, but "not to be officially reported," *see* CR 76.28(4)(c), Kentucky decision—*Herron v. Commonwealth*, 23 Ky. L.Rptr. 782, 64 S.W. 432 (1901)).

19. *See State v. Madry*, 12 Wash.App. 178, 529 P.2d 463, 466 (1974).