# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000206-MR

DUSTIN SPARKS          APPELLANT

V.          ON APPEAL FROM ESTILL CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
NO. 16-CR-00101

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Estill County jury convicted Dustin Sparks of murder. Sparks was sentenced to 35 years in prison and he appeals as a matter of right, alleging the following errors: (1) the trial court erred in refusing to suppress Sparks's statements after he asserted his right to remain silent and (2) the trial court erred by not allowing Sparks to cross-examine a police officer regarding the officer's misstatement of the law. After careful review, we affirm the judgment of the Estill Circuit Court.

## I. BACKGROUND

On December 4, 2015, Sparks attended a party at the home of Dontarius and Felicia Pittman. Felicia Pittman and Sparks are first cousins. Other

individuals at the party included Derrick and Jackie Marshall, Tyler Williams, Dakota Hall, and Benjamin Brewer, the victim. The party took place in the Pittmans' garage where the guests played pool, listened to music, and played the drinking game, beer pong. There was excessive drinking and the smoking of marijuana.

Sparks brought an army knife/bottle opener to the party. Sparks's girlfriend had given him the knife earlier that day, and Sparks was showing it off at the party. Sparks offered the knife/bottle opener to Jackie Marshall so she could open a beer.

At some point during the party, Sparks began nudging Benjamin Brewer in the back with the butt of his knife. Brewer turned around and swung at Sparks. Sparks responded by swinging his knife at Brewer, hitting him in the neck, severing his jugular vein and carotid artery. Some of the individuals, including Sparks, tried to stop the bleeding and perform CPR on Brewer while someone else called 911. Brewer had died by the time the ambulance and police arrived.

While outside of the Pittman home, Detective Tye Chavies took photographs of Sparks who was covered in Brewer's blood. Kentucky State Police Detective Jesse Armstrong interviewed the other individuals at the party, examined the crime scene, and arrested Sparks and interviewed him about the incident.

Sparks was tried before an Estill County jury on February 27 and February 28, 2017. Sparks maintained that he was acting in self-defense, and

2

the trial judge instructed the jury on the law of self-protection. The jury found Sparks guilty of murder and the judge entered judgment sentencing Sparks to 35 years' imprisonment. We set forth additional facts as necessary.

## II. ANALYSIS

### A. The trial court did not err in refusing to suppress Sparks's statements to Detective Armstrong.

Sparks first argues that the trial judge erred by allowing Sparks's police interview to be played in open court after Sparks made multiple assertions of his right to remain silent. Preservation of this issue is contested. Sparks's counsel made a motion to exclude the testimony at trial referring to a spot in the interview, about 10 to 11 minutes in, where Sparks says, "I'm not going to say another fucking word." However, Sparks's brief outlines other statements in which he allegedly invokes his right to remain silent, which were not raised at the trial court. Sparks's counsel did make a continuing objection to the interview, so we will treat the issue as preserved.

Sparks's interview with Detective Armstrong was played for the jury at trial. As stated above, Sparks maintains that he invoked his right to remain silent; thus, the statements made to Detective Armstrong should have been suppressed. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Sykes v. Commonwealth*, 453 S.W.3d 722, 724 (Ky. 2015) (quoting *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006)). Furthermore, the appellate court is bound to give "due

3

weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, interrogation must cease." *Michigan v. Mosley*, 423 U.S. 96, 100 (1975). Sparks is correct when he says the invocation of the right to remain silent is not required to be formal. *Buster v. Commonwealth*, 364 S.W.3d 157, 162-63 (Ky. 2012). Even so, the assertion must be unequivocal. *Davis v. United States*, 512 U.S. 452, 461-62 (1994); *Ragland v. Commonwealth*, 191 S.W.3d 569, 586-87 (Ky. 2006).

The beginning of the recording shows that Sparks submitted to the interview voluntarily. In fact, Sparks begins to make his statement and Detective Armstrong asks him to wait until after he has read him his rights.

Sparks: I told them...

Armstrong: Before you go too far... let me...

Sparks: I understand my rights

Armstrong: Well let me tell you, tell you what they are just to make sure.

Sparks: Okay.

Armstrong: You've heard them before, I guess.

Sparks: I've got the right to remain silent, anything can and will be used against me in a court of law.

Armstrong: So you, so you've got the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. You have the right to have that attorney present during any questioning. If you can't afford an attorney, one will be appointed to you by the Court. You have the right to not answer any

4

questions or make any statements if you want to do that. You understand those rights?

Sparks: Yes, sir.

It is apparent that Sparks heard and understood his rights.

Sparks transcribes the relevant portions of the interview in his brief. However, several portions of the transcribed interview are inaudible and/or taken out of context. For clarification, we examine each of Sparks's alleged errors[1], grouping similar alleged errors together.

*Statement 1:*

Sparks: If I had a bottle in my hand and punched him and he told you I hit him with a bottle?

Armstrong: So, instead, it was better to slice his throat?

Sparks: No, I didn't slice his throat, man. I just fucking. I just took my shit. I was fucking defending myself, that's all **I'm gonna say. [Inaudible].**

The emphasized portion of the above statement, "I'm gonna say," is actually inaudible on the trial recording. The Commonwealth's brief agrees that the statement is inaudible and gives a possible interpretation as Sparks saying, "That's all I done." In listening to the recording multiple times, we believe the Commonwealth's interpretation is closer to what Sparks actually said. Nonetheless, the Court can clearly say that Sparks's inaudible mumbling was not an invocation of his right to remain silent.

---

[1] We include more of the interview than what was transcribed in Sparks's brief to provide context to the conversation. Any testimony that is questionable as to content or contested is bolded.

5

*Statement 5:*

> Armstrong: All the fights you've been in, the only reason you didn't stab [inaudible] is because you didn't have a knife?
>
> Sparks: Yes, sir.
>
> Armstrong: Well it's a wonder you ain't been in prison for a while.
>
> **Sparks: [Inaudible] fucking talking to you. I'm not gonna sit here and talk to you. I'm trying to be civil about the situation, dude.**
>
> Armstrong: What's civil about cutting somebody's throat wide open?

Statement 5 is similar to Statement 1 in that Sparks claims he said, "I'm not gonna sit here and talk to you," while the beginning of this sentence is actually inaudible on the recording. As stated above, this cannot be an unequivocal invocation of Sparks's right to remain silent.

We analyze Statements 2 through 4 together.

*Statement 2:*

> Armstrong: Cause he wasn't, he didn't have his hands around your neck.
>
> Sparks: How, I... it could have happened, just...
>
> Armstrong: But it didn't.
>
> Sparks: I.
>
> Armstrong: Did he.
>
> **Sparks: I'm not gonna say another fucking word, man. This is bullshit. [Inaudible.]**
>
> Armstrong: Well, I'm just asking you, did he or did he not choke you?

*Statement 3:*

6

Armstrong:  Here's what I'm asking you...

**Sparks:  I mean when are ya'll gonna stop man?**

Armstrong:  Can I ask you a question?

Sparks:  Yes, sir.

*Statement 4:*

Sparks:  I am fucking scared of somebody that's fucking [inaudible]. It didn't happen any fucking time...

Armstrong:  He never even presented a threat to you at all.

Sparks:  Nah, I used to know Ben.

Armstrong:  Right.

**Sparks:  If somebody's walking up and just starts fucking... fucking throwing punches and hitting me, man, shit yeah, I'm fucking going to defend myself.  That's all I've got to say.  I'm defending myself.**

Armstrong:  Okay.  So, I guess we're just on different sides in the way we interpret defending ourselves.

Sparks argues that the above conversations show he invoked his right to remain silent.  The Court is not convinced.  After Sparks says, "I'm not gonna say another fucking word, man," he goes right into saying, "this is bullshit." Then, the recording indicates Sparks continues to talk, although it is inaudible, before Armstrong asks his next question.

Sparks was explaining that he was "scared" and "defending himself" when the above exchange took place.  The Commonwealth argues that Sparks's statement he wasn't "gonna say another fucking word" is not an assertion of the right to remain silent but simply that Sparks was not going to say anything else about why he was defending himself.

7

The Commonwealth's argument has some merit, however, we need not adopt that position to find that Sparks did not invoke his right to remain silent. "In order to invoke the right to remain silent, a suspect must *clearly* articulate his desire in a manner that a reasonable police officer in the situation would understand that the suspect wished for questioning to cease." *Meskimen v. Commonwealth*, 435 S.W.3d 526, 531 (Ky. 2013) (emphasis in original). "A suspect may waive his Miranda rights either expressly or implicitly. When a suspect has been advised of his rights, acknowledges an understanding of those rights, and voluntarily responds to police questioning, he may be deemed to have waived those rights." *Ragland v. Commonwealth*, 191 S.W.3d 569, 586 (Ky. 2006). "The basic governing legal rule is that a court, in considering whether a defendant has voluntarily relinquished his Fifth Amendment rights, must examine the 'totality of circumstances surrounding the interrogation'." *United States v. Ferrer-Cruz*, 899 F.2d 135, 141 (1st Cir. 1990) (internal citations omitted).

A defendant can waive his or her right to remain silent. The waiver must be voluntary, meaning that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Bartley v. Commonwealth*, 445 S.W.3d 1, 13 (Ky. 2014) (internal citations omitted). "The waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of abandoning it." *Id.* "The giving of Miranda warnings and an uncoerced statement must also be accompanied by a showing that the accused understood these rights." *Id.* "However, "[a]s a general proposition,

8

the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* (internal citations omitted).

Here, Sparks continued to speak voluntarily, before Detective Armstrong responded with an additional question. The same is true with Statement 4. Sparks said, "That's all I've got to say," but continued to speak. Sparks had previously confirmed to Detective Armstrong that he understood his rights, but nonetheless, Sparks voluntarily answered the Detective's questions, while only later claiming his right to remain silent was infringed upon. It is patently true that one who invokes his right to silence, must, in fact, remain silent.

Sparks's comment in Statement 3 "I mean when are ya'll gonna stop, man?" cannot be an invocation of the right to remain silent. A defendant may simply tell the police he does not want to talk to them; "I ain't saying nothing," and "I don't have anything to say," have all been sufficient to invoke the right to remain silent. *See Buster v. Commonwealth*, 364 S.W.3d 157, 163 (Ky. 2012) (internal citations omitted). However, in no way does Sparks's Statement 3 invoke his Fifth Amendment right.

*Statement 6:*

Armstrong: How long were you out when you blacked out?

**Sparks: I'm not talking to you. I know how you all work.**

Armstrong: Like a minute or two minutes?

9

Like the analysis above, in Statement 6 Sparks states "I'm not talking to you," but continues to speak before Detective Armstrong responds. This statement, however, is the closest thing to an invocation of the right to remain silent that Sparks asserts in the entire interview. Had Sparks ceased speaking after he states, "I'm not talking to you," we would undoubtedly find this to be sufficient to invoke his right to remain silent. But that is not the case before us.

Even if we found this to be a clear invocation of the right to remain silent, and the admission of the interrogation to be in error, any such error is harmless. Sparks argues that the entire interrogation should have been suppressed, however, only the statements taken after a person invokes his privilege can be suppressed. *See Buster*, 364 S.W.3d at 163 (citing *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966)).

At trial, Sparks's interrogation began playing for the jury, and Statement 6 does not occur for more than 30 minutes.[2] After Statement 6, Sparks continues to talk with Detective Armstrong. He maintains that he was acting in self-defense. The majority of the remainder of the recording indicates only the sound of Detective Armstrong typing, with minimal comment by Sparks, and the taking of statistical data by Detective Armstrong.[3] The only

---

[2] Recording begins playing at 11:01:58. Statement 6 occurs at 11:34:46.

[3] At 11:44:38 you can hear Detective Armstrong typing. Sparks makes minimal comments without being asked questions. Detective Armstrong collects statistical data from Sparks, such as name, birthdate, social security number, weight, etc. The recording ends at 11:58:07.

information subsequent to this point is either cumulative to Sparks's previous testimony or is not prejudicial to Sparks.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *St. Clair v. Commonwealth,* 451 S.W.3d 597, 632 (Ky. 2014) (quoting *Chapman v. California,* 386 U.S. 18, 24 (1967)). This requires "prov[ing] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 633 (internal citations omitted). "And, '[t]he State bears the burden of proving that an error passes muster under this standard." *Id.* (citing *Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993)).

We find the admission of anything beyond this point harmless beyond a reasonable doubt. By the time of the making of Statement 6, Sparks had already admitted to stabbing Brewer and adamantly claimed he was acting in self-defense. He had already stated that he would do anything he had to do to defend himself. The Court cannot say the admission of the remainder of the interrogation contributed to the verdict. As such, we find no error in the trial court refusing to suppress the interrogation video.

## B. The trial court did not err in refusing to allow Sparks to cross-examine Detective Armstrong about his misstatements of the law.

Sparks next asserts that Detective Armstrong misstated the law of self-protection in the interrogation recording that was played for the jury, and the trial court erred in refusing to allow Sparks to cross-examine Detective Armstrong about the misstatements. Sparks takes issue with two statements made by Detective Armstrong during the interrogation: "you don't have the

11

right to stab someone because they punch you, the law is very clear on that," and "you understand to kill someone your life has to be in danger." According to Sparks, Detective Armstrong left out the portion of Kentucky Revised Statute (KRS) 503.050(2) which states that you can use deadly force to protect against "serious physical injury..."

Sparks's counsel, during cross-examination, asked Armstrong: "You heard me tell the jury that the law of self-defense is basically that you have the right to use deadly force against someone intending to kill you, or someone who may cause you serious bodily injury. Now when you questioned Mr. Sparks on the tape you weren't exactly accurate in trying to explain to him your version of the law were you?" The judge subsequently said, "That'll be a question of law for the court. I don't want you to tell the jury what the law in self-defense is. You can argue what self-defense is but as far as giving them enough to making it self-defense you can't, sounds like that's what you're up to." The trial judge then offered to admonish the jury to not consider Detective Armstrong's summary of the law of self-defense, and Sparks's counsel agreed. The trial judge admonished the jury to disregard any statements made by Detective Armstrong to Sparks regarding the Kentucky law of self-protection.

We review a trial court's ruling limiting cross-examination for an abuse of discretion. *Davenport v. Commonwealth,* 177 S.W.3d 763, 771 (Ky. 2005). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). "It has long been

12

the law in Kentucky that an admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it." *Price v. Commonwealth*, 59 S.W.3d 878, 881 (Ky. 2001) (citing *Knuckles v. Commonwealth*, 261 S.W.2d 667, 671 (Ky. 1953); *Thomas v. Commonwealth*, 245 S.W. 164, 166 (Ky. 1922)).

Sparks cites to two statements by Detective Armstrong regarding the law of self-protection. The trial judge admonished the jury, and "the jury is presumed to follow the admonition." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (citing *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky. 1999)). "There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant or (2) when the question was asked without a factual basis *and* was 'inflammatory' or 'highly prejudicial'." *Id.* (internal citations omitted) (emphasis in original). Neither exception applies in this case. The two statements are innocuous within the 56-minute interrogation played for the jury. We find no abuse of discretion, and therefore, we find no error.

### III. CONCLUSION

For the above reasons, the judgment of the Estill Circuit Court is affirmed.

13

Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Venters, JJ., concur. Wright, J. not sitting.


COUNSEL FOR APPELLANT:

Ned Barry Pillersdorf
Pillersdorf, Derossett & Lane


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General

14