# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 19, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0206-MR

BETHEL C. POWELL                                                          APPELLANT

V.
                    ON APPEAL FROM HENDERSON CIRCUIT COURT
                    HONORABLE KAREN LYNN WILSON, JUDGE
                    NO. 22-CR-00532

COMMONWEALTH OF KENTUCKY                                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Henderson Circuit Court jury found Bethel Powell guilty of two counts of first-degree rape, victim under twelve, and eight counts of first-degree sexual abuse, victim under twelve. The jury recommended thirty years for each of the first two counts of first-degree rape, victim under twelve, and five years for each count of first-degree sexual abuse, victim under twelve, to be served concurrently. Bethel Powell appeals as a matter of right from the judgment alleging improper admission of uncharged misconduct evidence, insufficiency of evidence to support the verdict, and cumulative error. Finding no reversible error, we affirm.

## Factual and Procedural Background

On November 15, 2022, Bethel Powell ("Powell") was indicted by a Henderson County grand jury on six counts of first-degree rape, victim under

twelve years of age; six counts of first-degree sodomy, victim under twelve years of age; one count of kidnapping, minor; eight counts of first-degree sexual abuse, victim under twelve years of age; and one count of intimidating a participant in the legal process. The indictment was later amended to reflect only two counts of rape, victim under twelve, and eight counts of sexual abuse, victim under twelve.

Powell met Heather[1] when Heather was seventeen and Powell was thirty-three years of age. By the time she was eighteen, she and Powell were living together. Heather had a daughter, M.J., from a different relationship. Powell also had a daughter from a prior relationship, A.P. The daughters, M.J. and A.P., were within one year's age of each other. Heather and Powell had two children together, T.P. and S.P.

Because the children, actions, and testimony were largely location-based, the indictments were organized geographically. In chronological order, these were Lincoln Ave. ("the apartment"), Sutton Drive, "the storage unit," and Pringle Street.

Heather had drug issues and did not work outside the home. Powell took care of the children while Heather was in jail and rehab. Powell, Heather, A.P., and M.J. moved in together to an apartment on Lincoln Avenue in 2011 where T.P. was born. Sometime in 2015, before M.J. was four years old, the family

---

[1] Heather is a pseudonym used to further protect the identity of the victims.

moved to the home on Sutton Drive. S.P. was born while they lived at Sutton Drive.

In early 2021, the family was evicted from the Sutton Drive home and stayed a few months with the children's grandparents. While Heather was in rehab, Powell and the kids moved from Sutton Drive to a home on Pringle Street, where Heather joined them after she got out of rehab. She had another child in 2021.

Heather testified to not working, being in and out of rehab, being in and out of the house, and breaking up and getting back together with Powell. She testified that Powell was incarcerated during the middle of 2021 and, though their relationship had ended, they continued to talk. Heather then stated they were in a relationship until about a week and a half before December 27, 2021.

On that date, while Powell was incarcerated for unrelated charges, M.J. revealed Powell "did things to her." M.J. told Heather that Powell had done sexual things to her over the years.

Heather took M.J. to the emergency room and police were notified. No medical exam was performed due to the six months that had passed since the last alleged assault. Officers Garrison and Robertson responded to the hospital. The case was referred to Detective Isonhood and the Child Advocacy Center ("CAC"). While there, officers informed Heather how to file an Emergency Protection Order ("EPO"). They also informed Heather that filing the EPO could be done later because it was late in the evening. Heather obtained the EPO shortly thereafter. Officer Abby Black, a patrol officer of

3

thirteen years, served the EPO within two weeks, on January 12, 2022. The EPO was based on the events noted in Officer Garrison's report and events described at the hospital on December 27, 2021. Heather testified that she filed the protective order despite Powell's incarceration because Powell had reached out from jail.

At trial, M.J. identified Heather as her mother, A.P. as her older female sibling, and T.P. as her younger brother, all by photo identification. She directly verified Powell's identity in the courtroom. She proceeded to identify the named locations via pictures including Lincoln Ave. or "the apartment," the home on Sutton Drive, the home on Pringle Street, and "the storage unit," and identified the residents of those houses during the time they lived there.

**Lincoln Avenue**

M.J. was under the age of five when living at Lincoln Avenue. M.J. testified to activities at the apartment but revealed only that she "was really little" and "doesn't really remember" except he took her into the other room. She did not remember if anything happened there and repeated that she was very little and could not remember. All indictments at this location were dropped.

**Sutton Drive**

M.J. testified Powell touched her vagina with his penis and his finger when living on Sutton Drive, but later stated he only touched her with his penis in the storage unit and it never went in her vagina at Sutton. Powell put his finger inside M.J.'s vagina at Sutton. He also touched her chest area with

4

his hand and touched her butt with his penis and "sometimes it was soft and sometimes it was hard." M.J. also testified that he would touch her with a white vibrator. M.J. could not testify as to how often this occurred because "it was so much I could not tell you." M.J. said when she was really little he would "set me on his lap" to braid her hair "and rub me back and forth on his penis."

**Storage Unit**

M.J. testified to Powell taking her to the storage unit in which they stored their belongings after eviction from Sutton. Powell left the door cracked a little bit at the bottom. Powell placed "Warm Touch" lubricant on her vagina and attempted to put his penis in her vagina. M.J. testified it only went in "a little bit." It hurt and that is why she told him to stop, she "said no and he got upset."

M.J. and the family lived at "her Mimi's" until they found the house on Pringle Street.

**Pringle Street**

M.J. testified everything that happened at Sutton also happened at Pringle. M.J. testified that A.P. walked in and Powell told her they were play wrestling, but "he was touching me" and clarified "he had his hand down my pants."

M.J. testified she was afraid he would hurt her if she told anyone and that she had heard he was "messed up as a kid" at which time defense moved

5

for a mistrial. A jury instruction was given to disregard any of the statements regarding his childhood.

M.J. told personnel at her school about the physical abuse and drugs "and not the personal stuff," but when they contacted Powell, T.P. was blamed and was punished. After this, she did not tell anybody about the sexual abuse. M.J. said that they had lice "bad" at Pringle Street and had to be out of school. Powell denied the charges and denied doing anything sexual to the children when interviewed by Detective Isonhood. But in a video recorded jail call between Powell and an unknown woman which was played during the trial, Powell stated, in an effort to comb for lice, to having "dug in my kids' crotch" but "did not get no sexual pleasure from it." M.J. testified she never had pubic hair during the outbreaks of lice in their home. At the time of the trial she was thirteen. Both A.P. and T.P. revealed to the CAC that they had witnessed Powell with his hands down M.J.'s pants, including one time while Powell and M.J. were laying horizontal on the floor.

## ANALYSIS

Powell asserts three claims of error by the trial court: (1) admitting evidence of uncharged prior misconduct – including alleged physical and verbal abuse, drug use and distribution, and prior incarceration – in violation of KRE[2] 404(b); (2) denying his motion for directed verdict on the rape and sexual abuse

---

[2] Kentucky Rules of Evidence.

counts due to insufficient evidence; and (3) the cumulative effect of these alleged errors rendered his trial fundamentally unfair.

## I.      Evidence of Prior Bad Acts

Four days before trial, the Defendant received notice of the Commonwealth's Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts Pursuant to KRE 404(b).  Evidentiary rulings under KRE 404(b) are reviewed for abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  Even if error occurred, reversal is warranted only if the error was not harmless. RCr 9.24; *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994).

The Commonwealth filed the Notice of Intent with regard to the testimony about Powell's abuse of both the children and Heather, and included the fact Powell was incarcerated for six months prior to M.J.'s disclosure.  This included evidence of conduct with A.P. similar to that of M.J. of moving A.P. back and forth on his lap while braiding her hair wherein A.P. stated "she could feel his erection." Additionally, they proposed to introduce evidence of physical abuse, punishment, and treatment of his minor daughter A.P., his minor son, T.P., and his wife, Heather who was also the mother of T.P., and the alleged victim, M.J.

The trial court acknowledged the prejudice in much of this information as well as the relevance, stating it would allow anything directly regarding M.J.,

7

in particular, or similar conduct. The trial court "reserved ruling as to the weight, relevancy, and prejudices of other information in regards to [M.J.']s delay of reporting. . . based upon the nature of other evidence that comes in and any doors that might be opened throughout the process of the trial."

KRE 404(b)(1) prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for other purposes including proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. KRE 404(b)(2). Kentucky courts employ the three-part test articulated in *Bell v. Commonwealth,* 875 S.W.2d 882, 889-91 (Ky. 1994): (1) relevance to a non-propensity purpose; (2) probative value not substantially outweighed by undue prejudice under KRE 403; and (3) prior acts proved by clear and convincing evidence.

Case law has defined the boundaries of KRE 404(b). Evidence showing the defendant is a "bad person" or has a general disposition toward criminality is inadmissible. *Bell,* 875 S.W.2d at 889. When uncharged acts are remote, unrelated, or cumulative, their prejudicial effect may render them inadmissible even if marginally relevant. *Driver v. Commonwealth,* 361 S.W.3d 877, 883 (Ky. 2012). Failure to provide a limiting instruction when requested can exacerbate prejudice. *Parker v. Commonwealth,* 952 S.W.2d 209, 213 (Ky. 1997). A ruling based on a proper balancing of prejudice against probative value will not be disturbed unless it is determined that a trial court has abused its discretion. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999). The test for abuse

8

of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Id.*

**Statements about Powell's childhood.**

The testimony that Powell was "messed up as a kid" was immediately objected to and defense moved for a mistrial based on the KRE 404(b) territory, stating this had "gone off the rails." However, the trial court timely and thoroughly admonished the jury to "disregard any statement as to Mr. Powell's childhood or who he was as a child."

A jury is presumed to follow an admonition. *Mills v. Commonwealth,* 996 S.W.2d 473, 485 (Ky. 1999).

> There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was 'inflammatory' or 'highly prejudicial.'

*Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky. 2003) (emphasis in original). "[A]n admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it." *Price v. Commonwealth,* 59 S.W.3d 878, 881 (Ky. 2001).

Here, the statement made by the minor on the stand was made in the context of both why she was afraid of Powell regarding his behavior towards her and why she did not tell anyone. When asked about Powell saying anything to her regarding telling anyone, she testified she was afraid he would

9

take her away and hurt her because he was "really, like, big on that" and that he "was messed up as a kid."

Commonwealth had no knowledge M.J. would make any statements as to Powell's childhood. The jury admonition is effective because there was no overwhelming probability that the jury would be unable to follow the court's admonition or a strong likelihood the effect would be devastating. Neither was there a question raised without a factual basis that was inflammatory or highly prejudicial. Because the jury admonition was effective, no error occurred.

**Statements regarding physical abuse and criminal activity.**

Powell further alleges the testimony that Powell physically and verbally abused his family and provided drugs to the mother did not satisfy any non-propensity purpose under KRE 404(b). He claims these statements neither explained the charged sexual offenses nor bore upon motive, intent, or identity, but rather, that they portrayed Powell as a morally corrupt individual prone to criminal and abusive behavior. He further argues that while some contextual evidence may be admissible to explain the family dynamic or the victim's delay in reporting (*Driver*, 361 S.W.3d at 883), the Commonwealth's presentation went beyond that permissible scope because Powell claims the prosecutor elicited multiple references to Powell's drug use and prior incarceration, inviting the jury to infer a general criminal disposition.

The admissibility of KRE 404(b) evidence is within the discretion of the trial court. *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007). Under the three-prong *Bell* test, we ask (1) Is the evidence relevant? (2) Does it have

10

probative value? (3) Is its probative value substantially outweighed by its prejudicial effect? *Purcell v. Commonwealth*, 149 S.W.3d 382, 399-400 (Ky. 2004).

M.J. was questioned by Powell about charges of assault filed against him previously. When asked about her testimony in that case, M.J. stated that she had testified in court it was her actual dad "because I was literally living with [Powell] at the time so I had to say my actual dad did it because if I had said it was [Powell] I would have gotten in trouble." She said that Powell would hit them with belts and backscratchers. After the questioning of M.J. by defense counsel about what she reported to her school and the testimony about belting and physical abuse, M.J. testified that Powell choked her brother, punched her mom in the mouth, slapped her in the mouth, and sat on top of her mom when she was pregnant. She referenced that Powell supplied her drug-addicted mom with pills and used the pills to keep her addicted.

Under the first prong, we determine whether relevance exists. KRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Moreover, "[t]o show that evidence is relevant, only a slight increase in probability must be shown." *Blair v. Commonwealth*, 144 S.W.3d 801, 808 (Ky. 2004) (internal citations omitted). However, even a relevant piece of evidence may be excluded if its probative value is substantially outweighed by undue prejudice, confusion of the issues, misleading the jury, undue delay, or

11

presentation of cumulative evidence. KRE 403. Balancing the probative value with potential prejudice considers the worth of the evidence, the probability the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth. *Barnett v. Commonwealth,* 979 S.W.2d 98, 100 (Ky. 1998). An appellate court evaluating a trial court's balancing under KRE 403, must consider the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum prejudicial value. *Major v. Commonwealth,* 177 S.W.3d 700, 707 (Ky. 2005).

The evidence regarding the threat of physical harm was relevant to the delayed timing and hesitancy of the minor child to report. The statements were probative of the element of control and opportunity. Because such evidence increases the probability even slightly, we hold the admission of that evidence was proper under KRE 404(b). The evidence was also relevant for some purpose other than to prove the criminal disposition of the accused. It is relevant to provide chronology, opportunity, and motive or fear by the child of Powell.

Evidence of prior instances of abuse can be a form of "grooming" of victims, making them more receptive to later abuse and establishes a pattern of conduct or part of a "common scheme or plan." *See Riggle v. Commonwealth,* 686 S.W.3d 105, 112 (Ky. 2023) (citing *Pendleton v. Commonwealth,* 685 S.W.2d 549, 552 (Ky. 1985)). All children on the stand were questioned by Powell regarding their motive and desire to have him removed from their home.

Additionally, the trial court provided a limiting instruction directing the jury to consider such evidence only for context and not as proof of guilt. Given the strong testimonial evidence from the victims and corroboration by other witnesses, we cannot say the admission of the challenged statements was an abuse of discretion or rendered the trial fundamentally unfair. The decision to admit this evidence was not arbitrary, unreasonable, unfair, or unsupported by sound legal principles. In the present case, the trial court did not abuse its discretion in allowing these statements.

Powell admits his current objection to the testimony that he was incarcerated on other charges at the time the alleged sexual abuse occurred was unpreserved. Unpreserved issues are reviewed for palpable error. "We will reverse under the palpable error standard only when a "manifest injustice has resulted from the error." RCr[3] 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006). When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Baumia v. Commonwealth,* 402 S.W.3d 530, 542 (Ky. 2013).

Evidence of other crimes, wrongs, or acts is generally inadmissible to prove a defendant's character or propensity to act in conformity therewith but

---

[3] Kentucky Rules of Criminal Procedure.

13

may be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1).

Powell was incarcerated at the time of M.J.'s disclosure. Heather testified she continued her relationship with Powell after he went to jail, that she did not get the EPO the night at the hospital because she did not need to deal with it immediately (due to his incarceration). His incarceration was also referenced as the location of Detective Isonhood's interview with Powell, and the call between Powell and the woman played for the jury when Powell discussed "digging in his kids' crotch" was identified as a jail call.

This Court places little credence in the argument that his incarceration was inadmissible because of its relevance and its relative probative value to the prejudicial impact. The incarceration was relevant to the timing of the disclosures and the delay in the EPO. The probative value of the detective's interview and the phone call were substantial. Because it was not offered to prove Powell's character or predisposition to commit sexual abuse, admission of evidence that Powell was incarcerated was proper. We find no error.

## II.    Directed Verdict

Powell moved for a directed verdict of acquittal at the close of evidence. Powell alleges the court erred by failing to direct a verdict of acquittal where there was insufficient evidence. On appellate review, this Court reviews the trial court's rulings on motions for a directed verdict as follows: "if under the evidence as a whole it would not be clearly unreasonable for a jury to find the

14

defendant guilty, he is not entitled to a directed verdict of acquittal."
*Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983) (citing *Trowel v. Commonwealth*, 550 S.W.2d 530, 533 (Ky. 1977)).

When considering a motion for directed verdict, the trial court must draw all fair and reasonable inferences in favor of the non-moving party. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). A directed verdict should be granted only if the evidence is "so lacking that a reasonable juror could not find guilt." *Sawhill*, 660 S.W.2d at 5. On appellate review, the same standard applies as this Court has held when the denial of a properly preserved directed verdict motion is challenged on appeal. The standard of review is whether, viewing the evidence in the light most favorable to the Commonwealth, any rational juror could have found all the elements of the crime. *Quisenberry v. Commonwealth,* 336 S.W.3d 19, 35 (Ky. 2011).

During a bench hearing when Powell first moved for a directed verdict, the trial court considered the charges and relative testimony, and the indictment was amended, removing sodomy and kidnapping charges, and to reflect the evidence presented to the court upon which the jury could convict. The second motion for a directed verdict by Powell was made for the remaining charges on the same grounds, with the blanket statement that the evidence did not substantiate all the elements on the remaining counts. It did not state any particular charges that were faulty nor specific elements that were without evidence to support them. This overly broad motion was overruled by the trial court.

15

[I]n order to preserve an alleged directed verdict issue for appeal, <u>criminal defendants must</u>: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; **and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge** the Commonwealth failed to prove.

*Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020). Under RCr 10.26, an unpreserved error may be reviewed on appeal if the error is "palpable" and "affects the substantial rights of a party." Even then, relief is appropriate only "upon a determination that manifest injustice has resulted from the error." *Id.*

We note that an unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'

*Miller v. Commonwealth,* 283 S.W.3d 690, 695 (Ky. 2009) (citing *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky. 2006)).

Powell now alleges there was no evidence presented for the remaining two counts of first-degree rape. He cites Jury Instructions 2, 5, 8, and 9, to argue that because M.J. testified Powell did not penetrate her vagina with his penis, only his finger, at Sutton Drive, a directed verdict should have been granted on those three counts at Sutton Drive. Jury Instructions 5, 8, and 9 are counts of First Degree Sexual Abuse and require no penetration.

Those instructions read as follows (emphasis added):

<u>INSTRUCTION NO. 5</u>. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

16

A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact when he **touched the outside of her vaginal area with his penis** at their Sutton Drive residence; AND B. That at the time he did so, M.J. was less than twelve years of age.

INSTRUCTION NO. 8. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact when he **touched her butt with his penis** at their Sutton Drive residence; AND B. That at the time he did so, M.J. was less than twelve years of age.

INSTRUCTION NO. 9. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact when he **touched her butt with his penis (while she was sitting on his lap)** at their Sutton Drive residence; AND B. That at the time he did so, M.J. was less than twelve years of age.

M.J. lived at the Sutton Drive home between the ages of four and ten. M.J. testified to separate incidents of Powell's penis touching her butt while living at Sutton Drive. She said she would sit on his lap while he braided her hair and "he would move her back and forth" over his penis. She also stated, "He touched my vagina with his penis and his finger, he touched me on the outside of my vagina." Later she testified to separate touching, "He touched my butt, slid his penis against it, the cheeks." She later described his touching her vagina with a vibrator at Sutton Drive. This evidence demonstrates it was

17

not clearly unreasonable for a jury to find the defendant guilty under each of these instructions.

Jury Instruction No. 2 was for First Degree Rape, victim under 12 at Sutton Drive. The definition of "sexual intercourse" under the Kentucky Penal Code for sexual offenses "includes penetration of the sex organs of one person by any body part or a foreign object manipulated by another person. Sexual intercourse occurs upon any penetration, however slight; emission is not required." KRS 510.010(8). A person is guilty of rape in the first degree when he engages in sexual intercourse with another person who is incapable of consent because he is less than twelve (12) years old. KRS 510.040(1)(b)(2.).

M.J. testified that Powell put his finger into her vagina when they lived at the Sutton Drive home. There was additional conflicting testimony by M.J. regarding Powell's putting his penis in her vagina when she stated he had touched her with his penis between the ages of four and ten while living at Sutton Drive but later testified his penis never went inside at Sutton.

"For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Benham*, 816 S.W.2d. at 187. The evidence as a whole supported submission of the case to the jury. No error was committed.

Powell takes issue with the use of the word "penis" in Jury Instruction #2 as requiring that specific body part, and no other, to find guilt under the indictment of First Degree Rape. The jury read:

18

> INSTRUCTION NO. 2. You will find the defendant guilty of First Degree Rape (Victim Under 12) under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
> A. That in this county on or about January 1, 2015 through July 15, 2021, he engaged in sexual intercourse with M.J. at their Sutton Drive residence by inserting his penis in her vagina; AND
> B. That at the time he did so, M.J. was less than twelve years of age.

M.J. initially testified that Powell had touched her with his penis at this location and later testified that it was his finger. The jury was familiar with the charges and the indictment. A single charge was brought against Powell for First Degree Rape at Sutton Drive. This charge was found under Jury Instruction No. 2. There were not multiple counts of First Degree Rape referencing the use of different body parts, nor was there another charge for rape at this location. Given the sufficiency of the evidence to support the verdict under KRS 510.040, reducing the wording to a clerical error akin to a typo, this Court will not reverse on these grounds. Further, the matter of the jury instructions themselves is not before us and was one for the Commonwealth to object to, under the circumstances. This Court has the trial court's directed verdict before us on appeal. Under the evidence as a whole it was not clearly unreasonable for a jury to find the defendant guilty for one count of First Degree Rape, victim under twelve, at the Sutton Drive home.

The victims' testimony, if believed, was sufficient to establish each element of first-degree rape under KRS 510.040(1)(a) and first-degree sexual abuse under KRS 510.110(1)(b). Credibility determinations rest within the province of the jury. *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999).

19

While the defense emphasized the absence of physical corroboration in medical examinations because of the delay in reporting and inconsistencies in the child's testimony, those matters went to weight, not sufficiency. Viewing the evidence in the light most favorable to the Commonwealth, the jury verdict was not unreasonable and the trial court did not abuse its discretion when it denied the motion for directed verdict.

Finally, Powell raises allegations as to the unanimity of the verdict, citing *Miller v. Commonwealth,* 283 S.W.3d 690 (Ky. 2009). Powell alleges there is no certainty all twelve jurors agreed that the same conduct that warranted Powell's convictions for sexual abuse in Jury Instruction 12 did not provide the same grounds to warrant his conviction for sexual abuse under Jury Instructions 10 and 11. Those instructions read as follows (emphasis added):

> INSTRUCTION NO. 10. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact when he touched her vaginal area at their Pringle Street residence (**first time observed by T.P.**); AND B. That at the time he did so, M.J. was less than twelve years of age.

> INSTRUCTION NO. 11. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact at their Pringle Street residence (**second time observed by T.P.**); AND B. That at the time he did so, M.J. was less than twelve years of age.

20

> INSTRUCTION NO. 12. You will find the defendant guilty of First Degree Sexual Abuse (Victim Under 12) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about January 1, 2015 through July 15, 2021, he subjected M.J. to sexual contact at their Pringle Street residence (**observed by A.P.**); AND B. That at the time he did so, M.J. was less than twelve years of age.

While *Miller* stands for the proposition that identical jury instructions that "fail to factually differentiate between the separate offenses according to the evidence. . . [where] none of which could be distinguished from the others as to what factually distinct crime each applied to" would presumptively prejudice the Appellant, that situation was simply not present here. Each instruction contained geographically distinct identification or factually distinct witnesses corroborated by testimony.

As to the sexual abuse charges alleged on Pringle Street, the record indicates two separate incidents, factually identified by the jury instructions and a third distinct instruction referring to testimony factually different from the times testified to by T.P. In the situations described by T.P., one involved Powell yelling at him to get out and the other while he was on the couch.

T.P. said, "He had his hands down M.J.'s pants and was touching her . . . when we were living on Pringle Street . . . he was, I was asleep and I woke up with my sister gone and I went in the living room to go check and Powell and M.J. were in there and he had his hands down her pants.. . . and he said . . . get out." He then said he saw it two times, both while living at Pringle. T.P.

21

describes Powell's hands down M.J.'s pants while in the living room and does not describe the removal of her panties.

A.P.'s testimony, while difficult to discern in the recording because of her crying, ultimately elicited:

> **A.P.** When I was in the living room lying with S.P. and I was holding her while she was sleeping,
> **Commonwealth.** You were holding who while she was sleeping?
> **A.P.** S.P.
> **Commonwealth.** Is S.P. your baby sister?
> **A.P.** Yes, and um I went to go take her, well, my dad walked in and I was still awake, and [inaudible due to crying] awake so I faked sleep, [pause] and I picked up S.P. when he went into the other room, I thought he went into the bathroom. And whenever I was opening the door I was very quiet because M.J was sleeping and I walked in on them and I just cracked the door a little bit and whenever I looked in there I seen M.J. and Buddy on the bed and she was, he was,
> **Commonwealth.** Let's back up. Who's Buddy?
> **A.P.** My dad.
> **Commonwealth.** So [Powell] is Buddy?
> **A.P.** Yes.
> **Commonwealth.** And you said they were on the bed. And what was happening?
> **A.P.** He was taking . . . [inaudible due to crying] . . . trying to pull her um her um panties down.
> **Commonwealth.** Where were his hands?
> **A.P.** Trying to pull.
> **Commonwealth.** Was that was the only time you saw this happen?
> **A.P.** Yes.

As Jury Instructions 10 and 11 were factually distinct from each other being the first and second times T.P. witnessed anything, and the third referred to evidence in the record factually distinct from the times described by T.P. and in a different location, a reasonable juror could distinguish the facts and find Powell guilty under all three counts. The jurors were individually polled at

22

defense counsel's request and acknowledged that this was their verdict. The trial court did not err when it declined to grant Powell a directed verdict.

## III.  Cumulative Error

Powell alleges cumulative error rendered his trial fundamentally unfair. Under the cumulative-error doctrine, multiple errors, though harmless individually, may collectively deprive a defendant of a fundamentally fair trial. *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010); *Funk v. Commonwealth*, 842 S.W.2d 476, 483 (Ky. 1992). However, the doctrine applies only when multiple substantial errors exist. *Elery v. Commonwealth*, 368 S.W.3d 78, 102 (Ky. 2012).

Because cumulative error only applies when there is an accumulation of errors, it is inapplicable where, as here, no errors occurred. The trial court both admonished and instructed the jury properly, did not err in its admission of evidence, and did not err declining to grant the directed verdict. Because we find no individual error, no cumulative error exists and the trial was not fundamentally unfair. For these reasons there is no basis for reversal.

### CONCLUSION

For the foregoing reasons, the judgment of the Henderson Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller and Nickell, JJ., concur. Thompson, J., concurs in result only.

23

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Stephanie Lynne McKeehan
Assistant Attorney General